STATE OF NORTH CAROLINA v. WESLEY ADDISON SAMS

No. 173A85

(Filed 2 July 1986)

**1. Criminal Law § 91— Speedy Trial Act—motion to dismiss denied—prior order granting continuance voidable—collateral attack**

The trial judge in a prosecution for being an accessory before the fact to murder did not err by denying defendant's Speedy Trial Act motion to dismiss where defendant was tried within 120 days of his indictment if the time covered by a continuance was excluded as required by the order granting the continuance. Defendant took no exception to the order and therefore failed to preserve any error or mistake for appellate review; the trial judge could overrule the prior judge who granted the continuance only if the order was void or

---

State v. Sams

voidable; the fact that the continuance was granted *ex parte* may have made it voidable, but not void; and defendant's attack on the order was collateral. N.C.G.S. § 15A-701(b), N.C.G.S. § 15A-951.

2. **Criminal Law § 10.2— accessory before the fact to murder—evidence sufficient**

The trial judge did not err by denying defendant's motion to dismiss in a prosecution for being an accessory before the fact to murder, despite defendant's contention that the State had not proved the element of absence, where a witness testified that he was hired by defendant to shoot the victim; defendant called the witness on 28 February to say that the job had to be done before the next morning; the witness murdered the victim that night; his next contact with defendant was about four days later when he spoke to defendant over the telephone; and the witness went to defendant's house a couple of days later to get his money, at which time defendant asked him questions such as where the victim had been shot and whether the witness had shot him. The State offered ample evidence from which a reasonable inference of defendant's absence could be drawn.

3. **Criminal Law § 10.1— accessory before the fact to murder—indictment sufficient**

An indictment charging defendant with being an accessory before the fact to murder which did not charge that defendant was not present when the murder was committed was sufficient.

4. **Criminal Law § 10.2— cross-examination of State's witness—State's objection sustained—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for being an accessory before the fact to murder by sustaining objections by the State to two of the questions defendant sought to ask the State's witnesses concerning the impact of the death penalty on their testimony. Defendant was allowed to freely inquire into the extensive criminal past of the State's witness who committed the murder and his plea bargain with the State, and defendant was also allowed to establish that the other witness had been friends with the murderer for several years.

5. **Criminal Law §§ 10.3, 111.1— instructions—charges against codefendant dismissed—no plain error**

The trial court did not commit plain error in its instructions in a prosecution for being an accessory before the fact to murder where the charges against a codefendant were dismissed at the close of the State's evidence; the court at that time instructed the jury that the case involving the other defendant had been disposed of, that the case against defendant was proceeding, and that the disposition of the other case should not affect the jury's deliberations; and, in the final instructions, the court instructed the jury to consider all of the evidence. Rules of App. Procedure, Rule 10(b)(2).

APPEAL by defendant from concurrent sentences of life imprisonment and ten years, imposed by *Seay, J.,* following defendant's conviction of being an accessory before the fact to murder

and of felonious conspiracy to commit murder, at the 22 October 1984 Criminal Session of Superior Court, RANDOLPH County. Heard in the Supreme Court 18 November 1985.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Charles T. Browne for defendant-appellant.*

FRYE, Justice.

Defendant brings six assignments of error before this Court. The first concerns the Speedy Trial Act; the second, the sufficiency of the evidence; the third and fourth, the trial judge's acts in sustaining two of the prosecutor's objections; and the last two, jury instructions. After considering each of these assignments, we find no reversible error.

The facts underlying this case are bizarre. Around 10:00 p.m. on 28 February 1979, the Randolph County Sheriff's Department was called to the home of the victim, defendant's brother-in-law. The deputies found him lying on the floor of his living room beside a sliding glass door with broken glass. There were what appeared to be powder burns on his body. A shotgun lay nearby. The deceased's widow told the deputies that her husband had taken his shotgun outside to investigate noise made by his chickens, some of which were kept for fighting. Upon hearing a shot and a cry, she rushed into the living room and found the victim on the floor. Before he died, he told her and her son that he had fallen and shot himself in the process. The deputies subsequently found a break in the chain-link fence around the property and, nearby, a pair of bolt cutters and a ski mask. The authorities concluded that deceased had died as the result of an accidental self-inflicted wound.

As a result of new information, law enforcement officials exhumed deceased's body in 1983 and sent it to the office of the Chief Medical Examiner in Chapel Hill. The autopsy revealed that deceased's wounds were consistent with those caused by a rifle, and not a shotgun. The authorities arrested one Steven Luther Douglas, also under investigation for other charges, and charged him with first-degree murder. In early 1984, Douglas offered information in return for plea bargain arrangements. Douglas told

the police that defendant had hired him to kill the deceased, and that he had done so with a .30-30 rifle and had been paid $5,000 for the job. Douglas had a long criminal history, with four other murders, about twenty-five robberies and kidnappings, and various assaults and other crimes to his credit. Douglas testified for the State at defendant's trial in return for a life sentence to be served concurrently with two life sentences for his other murders.

Defendant was arrested on 24 and 25 April 1984, pursuant to warrants charging him with being an accessory before the fact to murder and with conspiracy to commit murder. On 30 April 1984, the grand jury returned bills of indictment for both offenses. Defendant and his sister, the victim's widow, were tried together at the 22 October 1984 Criminal Session of Superior Court, Randolph County, before Seay, J. At the close of the State's evidence, the trial judge dismissed the charges against the widow. Defendant then elected not to put on any evidence in his own behalf. The jury found him guilty of both offenses, and the trial judge sentenced him to life imprisonment for being an accessory before the fact to murder and ten years for conspiracy to commit murder. Defendant appealed his life sentence to this Court. His motion to bypass the Court of Appeals on his appeal of his conviction for conspiracy was allowed 8 April 1985.

I.

[1] As his first assignment of error, defendant argues that the trial judge erred in denying his motion to dismiss for failure of the State to try him within the limits fixed by the Speedy Trial Act, N.C.G.S. § 15A-701.

The Speedy Trial Act requires the State to try a defendant charged with a felony within 120 days from the date the defendant is arrested, served with criminal process, waives indictment or is indicted, whichever occurs last, unless that time is extended by certain specified events. N.C.G.S. § 15A-701 (1983 and Cum. Supp. 1985). In defendant's case, the starting date was the date of his indictment, 30 April 1984. His trial did not begin until 23 October 1984, 176 days later. Unless at least 56 of the days between defendant's indictment and his trial are excludable from computation for one of the statutory reasons, the trial judge should have granted defendant's motion.

State v. Sams

While the burden of proof on this question remains with the defendant, the State bears the burden of going forward with evidence to show that time should be excluded. N.C.G.S. § 15A-703 (1983). Defendant's motion to dismiss was heard when his case was called for trial on 22 October 1984. At that time, the State produced an order signed by Beatty, J., granting a continuance from 23 August 1984 until 22 October 1984 and directing that this time be excluded under the Speedy Trial Act. The Speedy Trial Act allows delays resulting from a continuance to toll the running of time under the Act "if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing . . . the reasons for so finding." N.C.G.S. § 15A-701(b)(7) (Cum. Supp. 1985). This subsection also requires that motions for such a continuance be in writing. *Id.*

Here, the requirements of the Speedy Trial Act were met. The State's motion for a continuance was in writing. Judge Beatty's order contains the mandatory finding about the ends of justice and sets forth two reasons for granting the continuance: the temporary unavailability of a witness and the inability of the judge assigned to the intervening terms to try the case.

However, defendant argues that Judge Seay should not have excluded the time covered by Judge Beatty's order for continuance because that order was *ex parte*. N.C.G.S. § 15A-951 (1983) requires written motions to be served upon the opposing party and proof of service filed with the court. Defendant introduced uncontradicted evidence that the State's motion for continuance was never served upon either the defendant or his attorney, and that although both had been in court for a hearing on defendant's motion to reduce bond on the date that appears on Judge Beatty's order, neither knew anything about the order. No return of service appeared in the file.

Thus, the question before this Court is whether Judge Seay should have disregarded Judge Beatty's order. We note initially that this question is the only one before this Court. Although defendant argues that one of the reasons given in Judge Beatty's order, that an essential witness was unavailable within the meaning of N.C.G.S. § 15A-701(b)(3), was an erroneous conclusion of

law, and that Judge Beatty abused his discretion in granting the order, defendant took no exception to Judge Beatty's order. He has therefore failed to preserve any error or mistake of law found therein for appellate review. N.C. R. App. P. 10(a). We note further that Judge Seay could not have given defendant relief for either alleged error. *See Calloway v. Motor Co.*, 281 N.C. 496, 189 S.E. 2d 484 (1972) ("The well established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law . . ."). Judge Seay had the power to grant relief only if Judge Beatty's order was either void or voidable.

An order is void *ab initio* only when it is issued by a court that does not have jurisdiction. Such an order is a nullity and may be attacked either directly or collaterally, or may simply be ignored. *Manufacturing Co. v. Union*, 20 N.C. App. 544, 202 S.E. 2d 309, *cert. denied*, 285 N.C. 234, 204 S.E. 2d 24 (1974) (consent order issued without the parties' consent would be void); *see also State v. Boone*, 310 N.C. 284, 311 S.E. 2d 552 (1984) (pretrial order denying suppression motion was a nullity where signed and entered out of session, out of county, and out of district); *Stroupe v. Stroupe*, 301 N.C. 656, 273 S.E. 2d 434 (1981) (order directing husband to pay wife's attorney's fees was void where the judge had not been assigned to preside over a session of court in the county on that date and was not authorized to hear motions and enter interlocutory orders on that date); *Pifer v. Pifer*, 31 N.C. App. 486, 229 S.E. 2d 700 (1976) (judge had no jurisdiction under URESA to condition child support payments on visitation rights; order was therefore void); *accord, Lumber Co. v. West*, 247 N.C. 699, 102 S.E. 2d 248 (1958); *Windham Distributing Co. v. Davis*, 72 N.C. App. 179, 323 S.E. 2d 506 (1984), *cert. denied*, 313 N.C. 613, 330 S.E. 2d 617 (1985) ("a judgment is not void 'if the court had jurisdiction over the parties and the subject matter and had authority to render the judgment entered' ").

In contrast, a voidable order stands until it is corrected. It may only be corrected by a direct attack; it may not be attacked collaterally. An irregular order, one issued contrary to the method of practice and procedure established by law, is voidable. *Manufacturing Co. v. Union*, 20 N.C. App. 544, 202 S.E. 2d 309, *cert. denied*, 285 N.C. 234, 204 S.E. 2d 24. *Accord, Menzel v.*

*Menzel*, 250 N.C. 649, 110 S.E. 2d 333 (1959), and *Lumber Co. v. West*, 247 N.C. 699, 102 S.E. 2d 248 (1958).

An order issued without notice where actual notice is required is irregular and thus voidable, but it is not void. It stands until set aside by a motion to vacate. *See Collins v. Highway Commission*, 237 N.C. 277, 74 S.E. 2d 709 (1953). Upon receipt of such a motion, the court may declare the order void. *Id. See also Hagins v. Redevelopment Commission*, 275 N.C. 90, 165 S.E. 2d 490 (1969); *Pask v. Corbitt*, 28 N.C. App. 100, 220 S.E. 2d 378 (1975).

Because N.C.G.S. § 15A-951 requires actual notice by service of process where, as here, a motion is written, Judge Beatty's *ex parte* order of continuance may have been voidable; nevertheless, it was not void. It was therefore binding on Judge Seay until defendant attacked it in a proper manner. This, however, defendant failed to do.

Instead of attacking Judge Beatty's order directly, by moving to vacate it or set it aside, defendant attacked it collaterally, a method permissible only for void orders. He moved under the Speedy Trial Act for dismissal of the charges against him and contended that the time excluded by the order should not toll time under the Act because the order was *ex parte*. Although faced with a clearly collateral attack, Judge Seay at one point during the hearing on defendant's motion nevertheless inquired of defendant's attorney, "Are you attempting to attack the Order that Judge Beatty signed? Is that what you're doing?" Defendant's lawyer replied, "I'm trying to find out if there ever was a hearing on it." At the hearing's conclusion, Judge Seay determined that defendant's attack on the order of continuance was collateral and that the order remained in force. He went on to find that with the time covered by the order excluded, defendant's trial did begin within 120 days of his indictment. Accordingly, he denied defendant's motion.

We find no error in Judge Seay's decision. He had before him a valid order of continuance that met the requirements set forth in N.C.G.S. § 15A-701(b)(7). Under these circumstances, he was required to exclude the time granted in the order of continuance in computing the time within which the State was required to try defendant. N.C.G.S. § 15A-701(b) (Cum. Supp. 1985) ("The follow

ing periods *shall* be excluded . . . ." (Emphasis added.) ). Defendant's first assignment of error is rejected.[1]

## II.

[2]  As his next assignment of error, defendant argues that the trial court should have granted his motion to dismiss at the close of the State's evidence because the State failed to offer substantial evidence of one of the elements of being an accessory before the fact of murder.

As we have said before, in ruling upon defendant's motion to dismiss, there must be substantial evidence of each essential element of the offense charged. *State v. Lowery*, 309 N.C. 763, 766, 309 S.E. 2d 232, 235 (1983). The elements of being an accessory before the fact to murder are:

1) that defendant counseled, procured, commanded, encouraged, or aided the principal to murder the victim,

2) that the principal did murder the victim, and

3) that defendant was not present when the crime was committed.

*State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539 (1977). Defendant contends that the State failed to introduce substantial evidence of the third element, that defendant was not present.

The State established defendant's involvement in his brother-in-law's death through the testimony of the witness Douglas. Douglas testified that defendant hired him to shoot the victim around 23 or 24 February 1979. On 28 February, defendant called Douglas to say that the job had to be done before the next morning; he testified that he had no further contact with defendant before the shooting. Douglas murdered the victim that night. He had a partner[2] take him to the scene and pick him up after the job was done. He testified that his next contact with defendant (after 28 February) was about four days later, when he spoke

---

1. We also note that the State apparently could have had the required time excluded under other exceptions.

2. Douglas had been convicted of murdering this partner.

briefly to defendant over the telephone. Douglas went to defendant's house a couple of days after this conversation to be paid. At that time, defendant asked him such questions as where the victim had been shot and whether Douglas had shot him.

Evidence from which the jury can reasonably infer defendant's guilt is sufficient evidence to go to the jury. *State v. Lowery*, 309 N.C. 763, 309 S.E. 2d 232. Here, the State offered ample evidence from which a reasonable inference of defendant's absence could be drawn. The fact that the principal did not mention the defendant's presence has been held to be sufficient by itself. *See State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982). Here, Douglas did not mention defendant in his account of the murder. The resulting inference that defendant was not present is strengthened in the instant case by Douglas' testimony that he did not have any contact with defendant between the 28 February phone call and the shooting and that his next contact after 28 February was some days later, and that defendant later asked about details of the murder that defendant would have known had he been present.

[3]  As a subissue, defendant contends that the indictment charging him with being an accessory before the fact to murder is fatally defective in that it fails to charge that he was not present. We have reviewed the indictment and find it substantially similar to the indictment found sufficient in *State v. Branch*, 288 N.C. 514, 541-42, 220 S.E. 2d 494, 513-14 (1975), *cert. denied*, 433 U.S. 907, 53 L.Ed. 2d 1091 (1977).

Accordingly, this assignment of error is rejected.

### III.

[4]  As his next two assignments of error, defendant contends that the trial court erred in sustaining the prosecutor's objections to questions defendant asked two of the State's witnesses on cross-examination.

The first occurred during defendant's cross-examination of the witness Douglas.

Q. You told the police this story about Wesley Sams and killing [the victim], about the month of April of 1984. Would that be about right?

A. I really don't keep up with time.

Q. Well, wasn't it about the time that Mr. Hutchins received the death penalty in Raleigh?

MR. ROOSE: OBJECTION.

THE COURT: SUSTAINED.

[Defendant Excepts—Defendant's Exception #18]

Q. Wasn't it in the spring of 1984?

A. Correct.

Q. And it was just before you were to be tried for the first degree murder of [the victim], isn't that right?

A. That's right.

Defendant contends that this question was a permissible attempt to disclose Douglas' reasons for testifying.

The second instance occurred during cross-examination of the State's witness, Patrick Gebauer, who testified to corroborate portions of Douglas' account. The attorney for defendant's sister inquired,

Q. You are a friend of Steve Douglas, are you not?

A. Yes, sir, I am.

Q. You don't want to see him go to the gas chamber, do you?

MR. ROOSE: OBJECT.

THE COURT: SUSTAINED.

[Defendant Excepts. Defendant's Exception #21]

MR. GREENE: I have nothing further.

Defendant argues that this question was designed to explore the extent of any bias Gebauer had that reflected upon his credibility.

Defendant certainly has the right to establish the bias of a witness who testifies against him. *State v. Spicer*, 285 N.C. 274, 204 S.E. 2d 641 (1974) (reversible error for trial judge to sustain every objection to questions attempting to establish who was providing money for state's witness and his wife, when both were un-

employed, and thus completely prevent defendant from showing the witness' bias). The range of relevant cross-examination is very broad. *State v. Newman*, 308 N.C. 231, 302 S.E. 2d 174 (1983). Nevertheless, the extent of cross-examination is largely within the discretion of the trial judge, and his rulings thereon will not be held in error absent a showing that the verdict was improperly influenced thereby. *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574.

Defendant here has failed to establish that the trial judge's limitations on the cross-examination of these two witnesses improperly influenced the verdict in his case. Defendant was allowed to establish sufficient bias on the part of Douglas to cast serious doubt upon his credibility. He was freely allowed to inquire into Douglas' extensive criminal past and the plea bargains Douglas had negotiated with the State. Defendant was also allowed, during his own cross-examination of Gebauer, to establish that Gebauer and Douglas had been friends for several years. Accordingly, the trial court did not abuse its discretion in sustaining the State's objections to these two questions. These two assignments of error are therefore rejected.

IV.

[5] As his last two assignments of error, defendant contends that the trial court erroneously instructed the jury on two different occasions.

At the close of the State's evidence, the charges against the victim's widow were dismissed. At that time, the trial judge instructed the jury that the case against defendant Sams would be proceeding. When defendant declined to introduce any evidence, the judge sent the jury out and held a charge conference. Before final arguments he instructed the jury as follows:

THE COURT: Now, members of the jury, as I said a few moments ago, this case is proceeding only as against the defendant, Wesley Sams. Now, the case that involved the other defendant was disposed of, is of no concern to you and you are not to allow this development—that is, how the [other] case was disposed of—not to allow this to affect in any way your deliberations and your determination in this case between the State of North Carolina and the defendant, Wesley Sams. [Defendant Excepts—Defendant's Exception #24.]

Defendant did not object or request an alternate to either instruction. Defendant now argues before this Court that the failure to explain to the jury the disposition of the charges against the victim's widow was prejudicial to him, because the jury would assume that she had pled guilty.

The second alleged error occurred when the judge made his final charge to the jury. He instructed, "[I]t is your duty to remember *all* of the evidence and *all* of it that has been offered here . . . during the course of this trial." (Emphases added.) Defendant argues that this instruction was incorrect. The judge should have instructed the jury to consider only the evidence relating to defendant. Instead, defendant argues, the jury was effectively instructed to consider against him, in determining his guilt, evidence that only related to his sister's possible guilt. Defendant also failed to object to this instruction.

Because defendant failed to object to either instruction at trial, Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure bars him from assigning either instruction as error, unless the error amounts to "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). To obtain relief under the "plain error" rule, defendant must show both that a particular instruction was error and that this error had a probable impact on the jury's finding of guilt. *Id.* The "plain error" rule is only applied in exceptional cases. *Id.*

Applying this test to defendant's first allegedly improper instruction, we find that the test is not met. Even assuming, *arguendo*, that it was error for Judge Seay to say merely that the case against defendant would continue, we believe that his subsequent instruction removed any possible prejudice resulting from his original statement.[3] *See State v. McGuire*, 297 N.C. 69, 254 S.E. 2d 165, *cert. denied*, 444 U.S. 943, 62 L.Ed. 2d 310 (1979).

We also find that the test is not met with respect to the second instruction. Although defendant is technically correct that Judge Seay's instruction to consider all of the evidence was er-

---

3. We note in passing that had the judge done what defendant says he should have done and explained to the jury that there was insufficient evidence to convict defendant's sister, the jury could have assumed that defendant must be guilty or the judge would have dismissed the case against him, too.

roneous, the instruction was not prejudicial in this case. The primary piece of evidence introduced at trial that would not have been admissible against defendant was his sister's extrajudicial statement describing the night her husband died. In this statement, she told essentially the same story she had originally told the sheriff's deputies. She consistently maintained that her husband told her he shot himself by accident. We have carefully reviewed this statement, and we conclude that, far from being prejudicial to defendant, its admission was probably favorable to him.

Accordingly, these two assignments of error are also rejected.

For all of the reasons discussed herein, we conclude that defendant received a fair trial, free from prejudicial error.

No error.