STATE OF NORTH CAROLINA v. CHRISTOPHER BRIAN KIVETT

No. 328A87

(Filed 3 February 1988)

1. Criminal Law § 91.14— Speedy Trial Act—427 days from indictment to trial—continuances excluded—no error

There was no error in a prosecution for first degree sexual offense where 427 days elapsed from defendant's indictment until trial. Three hundred twenty days resulted from eleven written motions for continuances by the State, each of which contained a facially valid reason or reasons why the case could not be tried, and the orders granting the motions recited that they were entered for the reasons set forth in the motions and found that the ends of jus-

State v. Kivett

tice would be served by granting the continuances. Although defendant argued that 154 days should be rejected because there were no findings supporting the conclusion that the ends of justice would be served, the State carried its burden by producing orders for continuances entered for facially valid reasons and, absent evidence produced by defendant, the court would not assume that other cases were not in fact being tried, that the State was trying cases of more recent origin, or that the cases being tried were not sufficiently significant to merit being tried ahead of this one.

2. **Criminal Law § 91.16— Speedy Trial Act—exclusion for period from date of indictment until beginning of next term—erroneous**

The trial court erred in a prosecution for first degree sex offense by excluding from the speedy trial computation a twenty-one day period from the date of indictment until the date the next term of superior court commenced. N.C.G.S. § 15A-701(a1)(1) (1983) does not contain the option of commencing the 120-day period at the beginning of the first regularly scheduled criminal session of superior court following arrest, service of process, waiver of indictment, or indictment; however, this exclusion was not necessary to bring the commencement of this trial within the mandatory 120-day period.

3. **Constitutional Law § 50— 427 day delay between indictment and trial—constitutional right to speedy trial—no violation**

The defendant in a prosecution for first degree sexual offense was not deprived of his constitutional right to a speedy trial by a 427 day delay between indictment and trial where the length of the delay was not sufficient alone to constitute unreasonable or prejudicial delay; the reason for most of the delay was the trial of other cases, and included as well a death and a medical emergency in the family of defendant's attorney, defendant's late arrival, and a heavy snowfall; two of the continuances were granted on motions by defendant's attorney and defendant's motion to dismiss was based solely on the North Carolina Speedy Trial Act; and defendant's allegations of prejudice in that the passage of time obscured the victim's memory and provided opportunity for collusion were not supported by the record. Sixth and Fourteenth Amendments to the U.S. Constitution.

4. **Witnesses § 1.2— four-year-old victim—competent to testify**

The trial court did not abuse its discretion by finding that a four-year-old sex offense victim was competent to testify where the *voir dire* record reveals that the witness testified that he knew what it meant to tell the truth, that it was good to tell the truth and not good to tell a lie, that he knew that he was there to tell the truth, and that he was going to tell the truth. N.C.G.S. § 8C-1, Rule 601.

5. **Rape and Allied Offenses § 5— first degree sex offense—four-year-old victim—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss at the end of the evidence in a prosecution for first degree sexual offense against a four-year-old victim where the testimony of the victim, corroborated by an examining physician, a social worker, and relatives of the victim provided substantial evidence as to the occurrence of a sexual act by force and against the

will of the victim, who was under the age of thirteen years, by this defendant, who was at least twelve years old and four years older than the victim. N.C.G.S. § 14-27.4 (1986).

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27 (a) (1986) from a conviction of first degree sexual offense before *Helms, J.,* and the imposition of a life sentence, at the 9 March 1987 Session of Superior Court, ROWAN County. Heard in the Supreme Court 8 December 1987.

*Lacy H. Thornburg, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State.*

*Thomas M. Brooke for defendant-appellant.*

WHICHARD, Justice.

Defendant was charged in an indictment, proper in form, with engaging in a sex offense with his four-year-old nephew in violation of N.C.G.S. § 14-27.4. The jury returned a verdict of guilty, and the trial court imposed the mandatory life sentence. N.C.G.S. §§ 14-27.4, -1.1(2) (1986). We find no error.

Defendant was living with his sister, the mother of the victim. The victim testified that defendant came into the victim's room, cut the victim's pants, and "[p]ut his pee pee in [the victim's] butt." The victim told defendant three times to stop, but he did not. Instead, when the victim told him to stop, defendant continued to "put his pee pee in [the victim's] butt."

Several witnesses testified to corroborate the victim:

Dr. Amy Suttle, who was qualified as an expert in pediatric gastroenterology, testified that she examined the victim on 22 October 1985. She found a tear with scarring in the anal area that could have resulted only from a very severe injury caused by "force of penetration against [the victim's] will of the anal area." The witness could not say what object caused the tear, but she knew "that an object of large enough diameter not only stretched the tightened closed muscle but also [tore] it and it was forcefully applied." The victim, pointing to his rectum, told Dr. Suttle that defendant had hurt him with "[h]is pee pee." Dr. Suttle believed that the injury could have been caused by penetration by a male sex organ.

The victim's great-grandmother testified that the victim had complained to her of pain in his anal area. When she asked what had happened to him, he told her that defendant had cut his britches and put his "pee pee" in his anal area. The victim said that he had "screamed and hollered," but defendant would not stop when he asked him to. He also told her that when he went to the bathroom, his "butt" hurt him "so bad."

The victim's grandmother testified that the victim also had told her that defendant had "stuck his pee pee in [the victim's] butt." She further testified that defendant was approximately seventeen or eighteen years old at the time.

John Thomas, a social worker with the Rowan County Department of Social Services, testified that the victim had used anatomical dolls to demonstrate to him what had happened. He stated that the victim had "inserted the [defendant] doll['s] [sex organ] into the [victim] doll['s] rectum." The victim also told Thomas, as he had told the other witnesses, that defendant had cut his trousers, had "stuck his pee pee in [the victim's] butt, that it hurt, [and] that he [had] cried out in pain."

Defendant testified on his own behalf. He stated that he was twenty-one years old at the time of the trial, which occurred one and one-half years after the incident in question. He denied that this incident, or any such incident, had occurred. He presented other evidence tending to negate the likelihood that the incident had occurred. Because this evidence is not pertinent to resolution of the issues presented, we do not set it forth in detail.

[1] Defendant first contends that the trial court erred in denying his motion to dismiss for the State's failure to try him within the time limits set by the Speedy Trial Act, N.C.G.S. § 15A-701. This act requires the State to try a defendant charged with a felony within 120 days from the date the defendant is arrested, served with criminal process, waives indictment or is indicted, whichever occurs last, unless that time is extended by certain specified events. N.C.G.S. § 15A-701 (1983 & Cum. Supp. 1987); *State v. Sams*, 317 N.C. 230, 233, 345 S.E.2d 179, 181-82 (1986). Here, the date from which the requisite time period must be measured is the date of defendant's indictment, 6 January 1986. The trial did not commence until 9 March 1987, 427 days later. Unless at least 307 of the days between defendant's indictment and his trial are

excludable from computation for one of the statutory reasons, the trial court should have granted defendant's motion. *State v. Sams*, 317 N.C. at 233, 345 S.E. 2d at 182.

While the burden of proof in supporting a motion to dismiss remains with the defendant, the State has the burden of going forward with evidence to show that periods of time should be excluded from the computation. N.C.G.S. § 15A-703 (1983); *State v. Sams*, 317 N.C. at 234, 345 S.E. 2d at 182. The act allows exclusion of a period of delay resulting from a continuance "if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial and sets forth in writing . . . the reasons for so finding." N.C.G.S. § 15A-701(b)(7) (Cum. Supp. 1987). The motion for a continuance must also be in writing. *Id.*

Here, the State produced eleven written motions for continuance, each of which contains a facially valid reason or reasons why the case could not be tried. The orders granting these motions recite that they were entered for the reasons set forth in the motions, *see State v. Heath*, 77 N.C. App. 264, 267-68, 335 S.E. 2d 350, 352-53 (1985), *rev'd on other grounds*, 316 N.C. 337, 334 S.E. 2d 250 (1986), and they contain the mandatory finding that the ends of justice served by granting the continuances outweigh the best interests of the public and the defendant in a speedy trial. On the basis of these written motions and orders, the trial court made the following finding:

That there are written continuances signed by the presiding judge excluding the following time periods:

| | | | |
|---|---|---|---|
| February 3, 1986 | through | March 2, 1986 | 28 days |
| March 10, 1986 | through | April 13, 1986 | 35 days |
| June 23, 1986 | through | July 20, 1986 | 28 days |
| July 22, 1986 | through | August 11, 1986 | 21 days |
| August 11, 1986 | through | September 2, 1986 | 22 days |
| September 2, 1986 | through | October 6, 1986 | 34 days |
| October 7, 1986 | through | November 10, 1986 | 35 days |
| November 10, 1986 | through | December 15, 1986 | 35 days |
| December 16, 1986 | through | January 5, 1987 | 21 days |
| January 6, 1987 | through | January 25, 1987 | 20 days |
| January 27, 1987 | through | March 8, 1987 | 41 days |
| | | | 320 days |

The court concluded as a matter of law that the time periods listed in the finding should be excluded.

Nothing else appearing, this exclusion was proper under the statute and sufficed to bring the trial within the requisite 120 day period. The sole reason stated for six of these continuances, which accounted for 154 of the 320 days excluded, was that "[t]he trial of other cases prevented the trial of this case during this session." Defendant argues that we should reject the exclusion of this 154 day period absent written findings, which are not present, supporting the conclusion that the ends of justice served by trying other cases before this one outweighed the best interests of the public and the defendant in a speedy trial of this case. We disagree. By producing the orders for continuance, all entered for facially valid reasons, the State carried its burden of going forward with evidence to show that the continuance periods should be excluded from the computation. N.C.G.S. § 15A-703 (1983). Absent evidence produced by defendant at trial and brought forward in the record on appeal, we cannot assume that other cases were not in fact being tried, that the State was trying cases of more recent origin while postponing this one, or that the cases being tried were not sufficiently significant that the ends of justice merited trying them ahead of this one. We thus hold that, on this record, the continuance periods were properly excluded and defendant was tried within the requisite 120 day period.

[2] Defendant also contends that the trial court erred in excluding the twenty-one day period from 6 January 1986, the date of the indictment, until 27 January 1986, the date the next term of superior court in Rowan County commenced. We agree. The act provides that the 120 day period begins to run on "the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last." N.C.G.S. § 15A-701(a1)(1) (1983). It does not contain the option of commencing the 120 day period at the beginning of the first regularly scheduled criminal session of superior court following arrest, service of criminal process, waiver of indictment, or indictment. The legislature established such a provision for appeals from district to superior court in misdemeanor cases. N.C.G.S. § 15A-701(a1)(2) (1983). This indicates legislative cognizance of such an option, and we thus must assume that the option was rejected except as specified. While we thus believe the trial court erred in excluding the

twenty-one days between the indictment and the next term of court, this exclusion was not necessary to bring the commencement of trial within the mandatory 120 day period.

[3] Defendant further contends that he was deprived of his constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court has identified four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial under the federal constitution. *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.Ed. 2d 101, 117 (1972). They are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id. See State v. Jones*, 310 N.C. 716, 721, 314 S.E. 2d 529, 532-33 (1984); *State v. Hartman*, 49 N.C. App. 83, 86, 270 S.E. 2d 609, 612 (1980).

As to the first factor, "the delay's duration is not *per se* determinative of whether a violation has occurred." *State v. Jones*, 310 N.C. at 721, 314 S.E. 2d at 533. As stated in *Jones:* "This Court has held that a delay of twenty-two months is not of great significance but is merely the 'triggering mechanism' that precipitates the speedy trial issue." *Id., citing State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975).

Here, 427 days elapsed from the date of indictment to the date of trial. We do not believe that this period — several months less than the twenty-two month period referred to in *Jones* — was sufficient, standing alone, to constitute unreasonable or prejudicial delay.

As to the second factor, most of the delay resulted from the granting of eleven motions to continue. The reason for seven of these continuances was the trial of other cases. As noted above, defendant has produced no evidence that other cases were not in fact being tried, that the State was trying cases of more recent origin while postponing this one, or that the cases being tried were not sufficiently significant that the ends of justice merited trying them ahead of this one. The reasons for the other four continuances were: (1) a death in the family of defendant's attorney; (2) a medical emergency in the family of defendant's attorney; (3) defendant arrived late, was called and failed to appear, and other matters were in progress when he appeared; and (4) a heavy

snowfall that wreaked havoc upon the court's docket. Delays occasioned by bereavement and a medical emergency in defense counsel's family, and by the defendant's own failure to appear, were presumably appropriate and in defendant's best interest. They thus can scarcely form the basis for his assertion of a denial of his constitutional right to a speedy trial. The additional delay occasioned by a heavy snowfall was clearly reasonable and without fault on the part of the State. So far as the record before us reveals, the reasons for the delay caused by the continuances here were reasonable and well within tolerable constitutional limits.

As to the third factor, it appears that two of the continuances were granted on motions by defendant's attorney. The record reveals no objection by defendant to any of the other continuances. Defendant's motion to dismiss, filed on 5 November 1986, was based solely on the North Carolina Speedy Trial Act and did not allege any violation of his federal constitutional right. *See State v. Jones,* 310 N.C. at 721, 314 S.E. 2d at 533. "Because the right to a speedy trial is a fundamental right under our State and Federal Constitutions, this Court has held that 'failure to demand a speedy trial does not constitute a waiver of that right, but it is a factor to be considered.'" *Id.* at 721-22, 314 S.E. 2d at 533, *citing State v. Hill,* 287 N.C. at 212, 214 S.E. 2d at 71. In considering the factor, we find that the record reveals no assertion by defendant of his federal constitutional right to a speedy trial prior to this appeal. The factor thus does not weigh heavily in defendant's favor. *See State v. Hartman,* 49 N.C. App. at 87, 270 S.E. 2d at 612.

As to the fourth factor, defendant argues that he was prejudiced in that the passage of time obscured the victim's memory and provided opportunity for collusion between the victim and his great-grandmother as to the victim's testimony. We disagree. The victim testified about the act in question with sufficient clarity to rebut any assertion that his memory was obscured, and several witnesses corroborated his testimony. The assertion regarding collusion between the victim and his great-grandmother is speculation unsupported by the record. We find nothing in the record that reveals any prejudicial results occasioned by the period of delay between the time of indictment and the time of trial.

State v. Kivett

In summary, we find no basis for concluding that defendant was deprived of his right to a speedy trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

[4]   Defendant contends that the trial court abused its discretion in finding the four-year-old victim competent to testify, because the victim arguably did not understand the nature and obligation of an oath or the meaning and necessity of telling the truth. Defendant points to the following probing of the witness by the district attorney during the voir dire examination to determine competency:

Q [Victim's name], do you know what it means to tell the truth?

A Yes.

Q What does it mean to tell the truth, [victim's name]?

A (No response)

Q Does that mean to tell something that really happened?

A Yes.

Q Is it good to tell the truth?

A Yeah.

Q Is it good to tell a lie?

A No.

Q Why is it not good to tell a lie?

A (No response)

Q Because it's just bad?

A Yeah.

Defendant further points to the following probing by defense counsel on cross-examination:

Q Do you know why you're here today?

A (No response)

Q Why are you here?

A To tell the truth.

Q What does that mean?

A (No response)

Q What is the truth, [victim's name]?

A (No response)

Q What happens to you if you tell the truth?

A (No response)

Q Does anything happen to you if you tell the truth?

A (Nods head affirmative)

Q What happens?

A (No response)

Q You don't know? You don't know what happens if you tell the truth?

A Uh huh.

Q What happens if you lie?

A (No response)

Q You don't know what happens if you lie?

A (Nods head negatively)

Q You don't know?

A (No response)

We note the following additional testimony from the witness upon questioning by the court:

THE COURT: . . . . Are you going to tell us the truth today about what these people ask you about?

A Yes.

Q It's a good thing to tell the truth and wrong to tell things that are not true, is that right?

A Yeah.

Q You know that bad things happen to you if you don't tell the truth and it's wrong to tell a lie?

A Yes.

Q Are you going to tell us the truth today?

A Yeah.

We have stated:

> The competency of witnesses testifying in trials occurring after 1 July 1984 is determined by Rule 601 of the North Carolina Evidence Code, which provides in pertinent part that "[e]very person is competent to be a witness" except "when the court determines that he is . . . (2) incapable of understanding the duty of a witness to tell the truth." N.C.G.S. [§] 8C-1, Rule 601(a), (b) (1986); *State v. Gordon*, 316 N.C. 497, 502, 342 S.E. 2d 509, 512 (1986). This Court has defined competency under both the new rules and the case law prior to their adoption as "the capacity of the proposed witness to understand and to relate under the obligation of an oath facts which will assist the jury in determining the truth of the matters as to which it is called upon to decide." *State v. Fearing*, 315 N.C. 167, 173, 337 S.E. 2d 551, 554 (1985), *quoting State v. Turner*, 268 N.C. 225, 230, 150 S.E. 2d 406, 410 (1966).

> . . . .

> Further, the competency of a witness "is a matter which rests in the sound discretion of the trial judge in the light of *his examination and observation of the particular witness.*" *State v. Fearing*, 315 N.C. at 173, 337 S.E. 2d at 554-55, *quoting State v. Turner*, 268 N.C. at 230, 150 S.E. 2d at 410. Absent a showing that the ruling as to competency could not have been the result of a reasoned decision, the ruling must stand on appeal. *E.g., State v. McNeely*, 314 N.C. 451, 453, 333 S.E. 2d 738, 742 (1985); *State v. Lyszaj*, 314 N.C. 256, 263, 333 S.E. 2d 288, 293 (1985).

*State v. Hicks*, 319 N.C. 84, 88-89, 352 S.E. 2d 424, 426 (1987).

The voir dire record here reveals that the witness testified that he knew what it meant to tell the truth, that it was good to tell the truth and not good to tell a lie, that he knew that he was there to tell the truth, and that he was going to tell the truth. We are satisfied that the witness' testimony met the standards of Rule 601; we cannot say that the trial court's ruling could not

have been the result of a reasoned decision. We consequently hold that there was no abuse of discretion in admitting the victim's testimony.

[5]   Defendant finally contends that the trial court erred in denying his motion to dismiss at the end of all the evidence. As stated in *State v. Hicks:*

> In ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from that evidence. *State v. Bell,* 311 N.C. 131, 138, 316 S.E. 2d 611, 615 (1984). Whether the trial court erred under these circumstances depends upon whether substantial evidence was introduced of each essential element of the offense charged and of defendant's being the perpetrator. *See State v. Gardner,* 311 N.C. 489, 510-11, 319 S.E. 2d 591, 605 (1984).

319 N.C. at 89, 352 S.E. 2d at 427. The testimony of the victim—corroborated by an examining physician, a social worker, and relatives of the victim—provided substantial evidence as to the occurrence of the essential elements of first degree sexual offense, *viz.,* a sexual act by force and against the will of a victim under the age of thirteen years by a defendant at least twelve years old and at least four years older than the victim. N.C.G.S. § 14-27.4 (1986). This evidence also sufficed to implicate defendant as the perpetrator. We thus find no error in the refusal to dismiss the charge.

No error.