HUNTER, JR., Robert N., Judge.
Kim ("Kim") and Barry ("Barry") Lippard ("Plaintiffs") appeal the trial court's 5 April 2016 order dismissing with prejudice their defamation claim against Larry Holleman ("Holleman") and Alan Hix ("Hix") ("Defendants"). After de novo review, we vacate the 5 April 2016 order dismissing this action on jurisdictional grounds and remand this matter for a trial on the merits.
I. Facts and Background
On 16 December 2013, Plaintiffs, congregants of the Diamond Hill Baptist Church ("DHBC") filed a verified complaint in Iredell County Superior Court alleging DHBC, along with Holleman, the Senior Minister, and Hix, the Minister of Music, publically defamed Plaintiffs to their church community. Plaintiffs also alleged DHBC engaged in ultra vires activity when its Board of Deacons and Personnel Committee voted to recommend Kim be dismissed as church pianist.
According to the complaint, Kim served as the church pianist and vocalist for thirty-four years, while Barry served as a deacon and as a member of several church committees. Although Kim and Hix had worked together for many years, their relationship was strained following a 2010 confrontation involving Kim's need for greater flexibility in her schedule. On 8 August 2012, after a rehearsal for a Sunday morning service, Kim and Hix began to argue about the assignment of a solo. Seeking to resolve the conflict, Holleman held a meeting between Plaintiffs and Hix in which he attempted an unsuccessful mediation. Holleman subsequently asked the church's board of deacons to recommend dismissing Kim from her position as church pianist. The board of deacons recommended dismissal, but stayed its recommendation pending a sustained attempt at reconciliation based on "biblical passages."
From the end of August until November 2012, Holleman counseled Kim and Hix, urging them to "commit unconditionally to the Biblically described pathway to reconciliation[.]" After initial progress, the process broke down, as Holleman claimed Kim failed to fully commit to an examination of her character.
After reconciliation failed, the board of deacons again recommended Kim be dismissed as church pianist. The matter was referred to the church's personnel committee. The personnel committee approved the recommendation and sent the issue to the entire congregation for a vote, pursuant to DHBC's constitution and by-laws. On 13 November 2012, Holleman sent Kim a letter accusing her of failing to take responsibility for her part in the breakdown of the reconciliation process.
Holleman called a meeting of the congregation on 28 November 2012 to vote on Kim's dismissal. At the meeting, he "delivered a nearly two (2) hour lecture to the Church congregation in which he published untrue statements regarding the Lippards by reading a twenty page diatribe." Holleman subsequently made written copies of the lecture ("the November 28 letter") available to the congregation. In the lecture, Holleman
misrepresented that [Kim] was unwilling to engage in reconciliation and the attempts at reconciliation between Hix, [Kim], and Holleman were unsuccessful and falsely depicted events involving [Plaintiffs], including that [Kim] had been involved with disputes with the Church for more than two years, that [Kim] maliciously slandered another choir member, and that [Kim] accused Hix of lying and intentionally hiding her sheet music[.]
Following the meeting, Holleman provided each member with a ballot which asked them to vote on Kim's dismissal after considering three questions:
1. Have Kim's actions been clearly demonstrated to her and to you as wrong according to the Scriptures?
2. Have the efforts of the Deacons, Personnel Committee and Pastor to restore her into the fellowship of the Body of Christ been sufficiently exercised with careful deliberation, patience, and graciousness, and according to the Scriptures?
3. Has Kim responded positively as instructed by the Scriptures?
The congregation voted to keep Kim as church pianist. Unsatisfied by the result, Defendants continued to discuss Plaintiffs' character and alleged failings with the other congregants.
After the vote, Holleman sought to ban Plaintiffs from worship services and to terminate their membership in the congregation. He also spoke with church members about the matter, allegedly telling one member Barry was a "liar" not to be believed "instead of Scripture." Holleman and Hix both exchanged emails with concerned parishioners regarding Kim's status at DHBC, repeating the allegations from the November 28 letter. In one of these emails, Holleman accused Barry of physically preventing Hix from leaving the church's music room and "aggressively going after" Hix following a meeting, characterizing this behavior as "illegal."
On 5 February 2014, Defendants filed an answer and motion to dismiss under North Carolina Rule of Civil Procedure 12(b)(1). Defendants argued the trial court lacked subject matter jurisdiction because Plaintiff's entire complaint involved an "ecclesiastical or ecumenical question of church governance." On 18 March 2014, Plaintiffs voluntarily dismissed all causes of action against DHBC. On 24 March 2014, Judge Anna Mills Wagoner heard Defendants' Rule 12(b)(1) motion to dismiss. Immediately before the hearing, Plaintiffs' counsel withdrew, and Plaintiffs appeared at the hearing pro se. Judge Wagoner summarily denied the motion to dismiss in a written order following the hearing. On 29 September 2014, Judge Theodore Royster dismissed the remaining ultra vires claims insofar as they applied to Holleman and Hix, leaving the defamation claims for resolution.
While the 2013 claims were still active, Plaintiffs hired a new attorney who filed a new civil action (15-CVS-606) containing nearly identical theories for relief based upon defamation, ultra vires corporate action, and negligent supervision against DHBC, Holleman, and Hix. Because the record does not contain the second complaint, we are unable to determine whether the second complaint involved identical facts.
Defendants subsequently filed a motion to dismiss in 15-CVS-606, which was heard before Judge Michael Duncan. At the hearing, Defendants argued all three claims brought in 15-CVS-606 should be dismissed for lack of subject matter jurisdiction. Defendants also made an oral motion to dismiss the defamation claim in the 2013 case. While the trial court granted the motion to dismiss in 15-CVS-606, holding all three claims were barred by lack of subject matter jurisdiction, the court refused to rule on the oral motion to dismiss the 2013 case, finding "Judge Anna Mills Wagoner previously ruled on that issue as a matter of law[.]"[1]
On 16 February 2016, Holleman and Hix filed another motion to dismiss in the instant case under Rule 12(b)(1), again contending the trial court lacked subject matter jurisdiction over an "ecclesiastical or ecumenical question[ ] of church governance...." Judge Martin B. McGee heard the motion on 21 March 2016. [R. Defendants advanced two arguments for overruling Judge Wagoner's order. First, they argued the order was vulnerable because of circumstances surrounding the first hearing: Plaintiffs' counsel withdrew on the day of the original motion to dismiss, forcing them to appear pro se at the hearing, and Plaintiffs voluntarily dismissed DHBC as a defendant only two days prior to the hearing. Second, Defendants argued the trial court had the authority to hear challenges to its jurisdiction at any time, regardless of whether the issue had been raised previously.
In an order filed 5 April 2016, Judge McGee granted Defendant's motion to dismiss, holding the issue of subject matter jurisdiction was an exception to the general rule against one superior court judge overruling another. Further, Judge McGee found it was "not entirely clear if Judge Wagoner was leaving the issue of subject matter jurisdiction open to be reconsidered by denying the motion to dismiss 'at this point' given the circumstances of the hearing [.]" With respect to Plaintiff's defamation claim, the court held "[a]ll of the alleged defamatory statements involve internal communication between leaders of the church and church members regarding matters of church governance, leadership, and membership." Plaintiffs filed a notice of appeal of Judge McGee's order on 5 May 2016.
II. Jurisdiction
Plaintiffs appeal the order of a superior court in a civil action that disposes of all the issues as to all parties. As a result, jurisdiction is proper in this Court under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b) (2015).
III. Standard of Review
"We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the pleadings." Harris v. Matthews , 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). In our review, "we view the allegations as true and the supporting record in the light most favorable to the non-moving party." Mangum v. Raleigh Bd. of Adjustment , 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).
IV. Analysis
Although the parties have not raised a key jurisdictional issue, we address ex mero motu whether Judge McGee's order dismissing the case for lack of subject matter jurisdiction violated the "well-established rule" that no appeal lies from one superior court judge to another. Calloway v. Ford Motor Co. , 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972).
"The power of one judge of the superior court is equal to and coordinate with that of another." Michigan Nat'l Bank v. Hanner , 268 N.C. 668, 670, 151 S.E.2d 579, 580 (1960). Thus, "one Superior Court judge may not correct another's errors of law; and ... ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." Calloway , 281 N.C. at 501, 189 S.E.2d at 488.
There are two narrow exceptions to this rule. The Calloway rule does not apply where "the original order was (1) interlocutory, (2) discretionary, and (3) there has been a substantial change of circumstances since the entry of the prior order." First Fin. Ins. Co. v. Commercial Coverage Inc. , 154 N.C. App. 504, 507, 572 S.E.2d 259, 262 (2002). A "substantial change" occurs only if the party seeking modification or reversal can show there has been an "intervention of new facts which bear upon the propriety" of the original order. Id. at 507, 572 S.E.2d at 262 (quoting Calloway , 281 N.C. at 505, 189 S.E.2d at 490 ).
Absent a showing of changed circumstances, a superior court judge may only overrule an earlier order if the first judge's order was either void or voidable. State v. Sams , 317 N.C. 230, 235, 345 S.E.2d 179, 183 (1986). "An order is void ab initio only when it is issued by a court that does not have jurisdiction." Id. at 235, 345 S.E.2d at 183.
First, we note Judge McGee erroneously found the issue of subject matter jurisdiction is itself an independent exception to the Calloway rule, relying on this Court's decisions in McCoy v. City of Charlotte , No. COA 12-219, 2012 WL 4510874 (N.C. Ct. App. Oct. 2, 2012) (unpublished),[2] and McAllister v. Cone Mills Corp., 88 N.C. App. 577, 364 S.E.2d 186 (1988). Subject matter jurisdiction is the source of the court's authority to adjudicate the controversy before it. Haker-Volkening v. Haker , 143 N.C. App. 688, 693, 547 S.E.2d 127, 130 (2001). Because jurisdiction is a necessary condition for a court's authority, the courts have the "inherent judicial power to inquire into, hear and determine questions of [their] own jurisdiction...." and may exercise that power at any point during a case, even at the Supreme Court. Lemmerman v. A.T. Williams Oil Co. , 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986).
Despite that inherent authority, both cases Judge McGee relied upon are distinguishable and do not support his interpretation. In McCoy , the trial court initially denied the defendant's motion to dismiss for lack of subject matter jurisdiction. Id. at *2-3. The plaintiff then entered a voluntary dismissal without prejudice, before filing a new complaint raising several new causes of action. Id. at *3. We held the judge hearing the new case was not legally bound by the first judge's denial, and upheld its order dismissing the new complaint. Id. at *9.
In McAllister , the trial court denied the defendant's motion to dismiss, in which the defendant argued the plaintiff's claims were subject to the Workers' Compensation Act and should be brought before the Industrial Commission. McAllister , 88 N.C. App. at 578, 364 S.E.2d at 187. After discovery, another trial court judge granted summary judgment in favor of the defendant, holding the court indeed lacked subject matter jurisdiction. Id. at 579, 364 S.E.2d at 188. We affirmed, holding that the issue of subject matter jurisdiction was interlocutory and not immediately appealable, but instead could be raised at any time during the case. Id. at 579, 364 S.E.2d at 188.
While these cases indeed reflect upon the issue of when one judge's ruling may be overruled by another, they are procedurally and substantively distinct from the case at bar. Unlike the defendant in McCoy , who brought motions to dismiss in two separate actions, or the defendant in McAllister who merely prevailed on summary judgment after losing its motion to dismiss, Defendants in the instant case brought two motions to dismiss before two separate judges in the same case.
Further, as the McAllister court recognized, the denial of a motion to dismiss for lack of subject matter jurisdiction is usually an unreviewable interlocutory order. Teachy v. Coble Dairies, Inc. , 306 N.C. 324, 326, 293 S.E.2d 182, 183 (1982). However, the North Carolina Supreme Court has since held there is appellate jurisdiction over a trial court's order denying a motion to dismiss brought by a religious entity seeking to invoke the First Amendment's prohibition against civil encroachment in ecclesiastical matters. Harris , 361 N.C. at 270-71, 643 S.E.2d at 569-70. Unlike other challenges to the court's subject matter jurisdiction, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury [,]" and thus affects a substantial right. Id. at 270, 643 S.E.2d at 570 (citation omitted). Therefore, rather than asking one superior court judge to countermand one of his colleagues, Defendants were free to seek appellate review of Judge Wagoner's order.
Turning to the established bases for overruling an existing order, we hold Judge Wagoner's order was not vulnerable to attack. First, as established above, while the order was interlocutory, it was subject to appellate review.[3] Second, Judge Wagoner's order was not discretionary. Our courts have previously applied the exception to the Calloway rule to purely discretionary rulings, such as class certification, Dublin v. UCR, Inc , 115 N.C. App. 209, 444 S.E.2d 455 (1994), motions to amend, Madry v. Madry , 106 N.C. App. 34, 415 S.E.2d 74 (1992), and motions to seal documents in a domestic case, France v. France , 224 N.C. App. 570, 738 S.E.2d 180 (2012). Here, "[t]he issue of jurisdiction is basically one of law." Burgess v. Gibbs , 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964) (internal citation omitted). Because Judge Wagoner's order decided a question of law, her decision was not discretionary, and falls outside the scope of the narrow exception to the Calloway rule.
Finally, Defendants failed to carry their burden of showing changed circumstances. Far from showing the existence of "new facts" sufficient to cast doubt on the legal propriety of Judge Wagoner's order, Defendant's assertions to Judge McGee on this point were largely limited to circumstances existing prior to and at the time of the first hearing before Judge Wagoner. First Fin. Ins. Co. , 154 N.C. App. at 507, 572 S.E.2d at 262. At no point during the hearing before Judge McGee did Defendants show that the voluntary dismissal entered in favor of DHBC or Plaintiffs' loss of counsel prior to the first hearing had any effect on the case following entry of Judge Wagoner's order. Similarly, although Defendants referenced the dismissal of identical claims in 15-CVS-606, the trial court's order in that case, refusing to rule on matters in the instant case precisely because Judge Wagoner had already ruled on the issue, cannot possibly create changed circumstances sufficient to overturn Judge Wagoner's ruling in another forum.
In order to show Judge Wagoner's order was not void ab initio , and because the trial court may need further guidance on the issue of First Amendment applications in subsequently resolving this issue, we will briefly discuss the subject matter jurisdiction issue.
The First Amendment's Establishment and Free Exercise Clauses prohibit Congress from enacting "any law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. This prohibition extends to the judicial branch, because "(1) by hearing religious disputes, a civil court could influence associational conduct, thereby chilling the free exercise of religious beliefs; and (2) by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks establishing a religion." Doe v. Diocese of Raleigh , --- N.C. App. ----, ----, 776 S.E.2d 29, 35 (2015) (internal citations and quotation marks omitted). As a result, the courts must avoid inquiries into church doctrine that risk "entangle[ment] in essentially religious controversies." Serbian E. Orthodox Diocese v. Milivojevich , 426 U.S. 696, 709, 49 L.Ed. 2d 151, 163 (1976).
Thus, the extent to which the courts may intrude into matters of internal church policy is severely circumscribed. W. Conf. of Original Free Will Baptists v. Creech , 256 N.C. 128, 140-41, 123 S.E.2d 619, 627 (1962). "The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies...." Reid v. Johnston , 241 N.C. 201, 204, 85 S.E.2d 114, 117 (1954). We have defined an ecclesiastical question as one involving "doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of membership[.]" E. Conf. of Original Free Will Baptists v. Piner , 267 N.C. 74, 77, 147 S.E.2d 581, 583 (1966).
Nonetheless, the First Amendment is not an absolute shield to liability. Courts may adjudicate a case involving a religious organization if the dispute may be settled by application of "neutral principles of law" that are equally applied in all such disputes. Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church , 393 U.S. 440, 449, 21 L.Ed. 2d 658, 665 (1979). See also Harris , 361 N.C. at 271-72, 643 S.E.2d at 570-71. In determining whether the courts have jurisdiction, "[t]he dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine." Smith v. Privette , 128 N.C. App. 490, 494, 495 S.E.2d 395, 397-98.
Our courts have not yet considered whether a statement issued by a religious leader or made from the pulpit creates an actionable defamation claim capable of adjudication under neutral principles of tort law. However, several federal courts and out-of-state courts have confronted this question and concluded the First Amendment does not create a categorical bar to such defamation claims. See, e.g. , Hutchison v. Thomas , 789 F.2d 392 (6th Cir. 1986) ; Kavanagh v. Zwilling , 997 F. Supp. 2d 241 (S.D.N.Y. 2014) ; Klagsbrun v. Va'ad Harabonim of Greater Monsey , 53 F. Supp. 2d 732 (D.N.J. 1999) ; Downs v. Roman Catholic Archbishop , 683 A.2d 808 (Md. Ct. Spec. App. 1996) ; Black v. Snyder , 471 N.W.2d 715 (Minn. Ct. App. 1991).
Rather, the court must review the specific elements of the plaintiff's claim and determine whether and to what extent the dispute is founded on doctrinal matters. See, e.g. Kavanagh , 997 F. Supp. 2d at 250-51 ; Klagsbrun , 53 F. Supp. 2d at 739. If such consideration reveals a "purely secular dispute between third parties and a particular defendant, albeit a religiously affiliated organization," the First Amendment will not bar jurisdiction. Klagsbrun , 53 F. Supp. 2d at 739 (quoting General Council on Fin. & Admin. of United Methodist Church v. Cal. Superior Court , 439 U.S. 1369, 1373, 58 L.Ed. 2d 77, 82 (1978) ). If the court "would have to determine the truth of the defendants' statements ... and, in doing so, would examine and weigh competing views of church doctrine, the result is entanglement in a matter of ecclesiastical concern that is barred by the First Amendment." Kavanagh , 997 F. Supp. 2d at 250 (internal citations and quotation marks omitted).
This line between an ecclesiastical and a secular dispute can be difficult to discern, and requires an intensive inquiry into the relevant facts and applicable laws. Defamation and religious questions are legally contextual. Libel may sometimes cloak itself in religious terminology, but that would not prevent civil adjudication of a claim.
We need not decide at this stage of the pleadings whether Defendants' statements regarding the Plaintiffs are justiciable because we hold that some of the statements can be read contextually as libel per se . For example, Holleman's accusation of criminal conduct can be construed as libel per se against Barry. Thus, we conclude Judge Wagoner's order was not void ab initio .
At this stage of the pleadings we consider the allegations made in the light most favorable to the Plaintiffs and hold it is premature to dismiss the claims under Rule 12(b)(1). We do so for two reasons. First, Judge Wagoner's order is not before us on appeal or cross appeal. Second, we hold Judge McGee did not have jurisdiction to overrule Judge Wagoner. Defendants could have appealed Judge Wagoner's order had they felt the order was imperfect but they did not for reasons satisfactory to themselves.
Further, the complaint contains sufficient facts to state a claim for defamation which is outside the ecclesiastical boundary line of the First Amendment. The trial court can revisit this issue of whether or not the ecclesiastical boundary line is violated if and when the parties come forward with a forecast of evidence to support a motion for summary judgment.
As a result, the 5 April 2016 order dismissing the claim for lack of subject matter jurisdiction is vacated and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
VACATED AND REMANDED.
Report per Rule 30(e).
Judges CALABRIA and BERGER concur.

We note at this point in the narrative, where two different superior court judges, examining the same facts, came to diametrically opposed conclusions, neither party sought to appeal any of these rulings to the Court of Appeals. We also note no party has yet appealed either Judge Wagoner's or Judge Duncan's orders to this Court.

We note for the record that "[a]n unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority. Accordingly, citation of unpublished opinions ... is disfavored." N.C.R. App. P. 30(e)(3) (2016).

We note that Judge Wagoner's order was not the subject of an appeal when entered, nor is the subject of a cross appeal. Therefore, the merits of that order are not technically before this Court.