STATE OF NORTH CAROLINA v. ANTHONY MELVIN

No. 8913SC645

(Filed 19 June 1990)

1. **Criminal Law § 76.2 (NCI3d) — voir dire on voluntariness of confession — mistrial — no voir dire required on retrial**

    Where defendant's first trial ended in a mistrial, the court in his second trial was not required to conduct a voir dire to determine the admissibility of his confession since a voir dire was held at the first trial, and defendant offered no additional evidence justifying a reconsideration of the prior ruling on admissibility of the inculpatory statement; moreover, even if the trial court did err in failing to conduct a voir dire hearing during the second trial, such evidence was not prejudicial because the record revealed that there was competent evidence from documents and testimony of witnesses apart from the statements sufficient to justify the verdict rendered by the jury.

    **Am Jur 2d, Evidence §§ 582, 585.**

2. **Criminal Law § 74 (NCI3d) — confession written down by another — acquiescence by defendant — investigator's reading to jury proper**

    Where defendant made a statement to an investigator who read it back to defendant, and defendant had the investigator include a sentence at the bottom of his statement that "[t]he basic facts in this is true and untrue due to the slant that it is written," such acknowledgment was sufficient to indicate defendant's acquiescence in the correctness of the writing, and the trial court therefore did not err in permitting the investigator to read the confession as part of his testimony.

Am Jur 2d, Evidence §§ 532, 595.

3. **Criminal Law § 214 (NCI4th)— speedy trial—time between mistrial and next term of court—improper exclusion—defendant not prejudiced**

For purposes of the Speedy Trial Act the trial court erred in excluding the time period between the declaration of a mistrial and the beginning of the next term of court; however, this error was harmless since this exclusion was not necessary to bring the commencement of defendant's retrial within the statutory 120 day period.

Am Jur 2d, Criminal Law § 852.

4. **Criminal Law § 224 (NCI4th)— speedy trial—continuances granted—time properly excluded**

Continuances granted for the illness of a State's witness, a crowded court calendar, and representation of another client in federal court by defense counsel were for facially valid reasons, and the trial court properly excluded them from the time computation under the Speedy Trial Act.

Am Jur 2d, Criminal Law §§ 860-864.

5. **Criminal Law § 288 (NCI4th)— motions to continue—complaint about service on attorney—no motions to vacate orders**

Defendant could not complain on appeal that motions to continue were not served upon his attorney of record and that proof of service was not made by the State as required by N.C.G.S. § 15A-951(b) where there was no motion to vacate any of the orders, and they therefore remained in effect.

Am Jur 2d, Continuance §§ 27, 48.

6. **Criminal Law § 34.7 (NCI3d)— writing insurance applications without "applicants' " knowledge—evidence of other false applications properly admitted**

In a prosecution of defendant for obtaining property by false pretenses where the evidence tended to show that defendant wrote insurance applications for people without their knowledge and paid the first month's premium in order to get a six months' advance on the annual commission, the trial court did not err in admitting evidence concerning other allegedly false applications submitted by defendant, since the trial court admitted the evidence as proof of opportunity, intent,

preparation, and plan, and the court gave an appropriate limiting instruction. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 321, 324-326.**

7. **False Pretense § 3.1 (NCI3d) — filling out false insurance applications — receiving commissions — sufficiency of evidence**

In a prosecution for obtaining property by false pretenses, evidence presented by the State was sufficient to support a permissible inference that defendant intended to cheat or defraud when without authority he submitted a life insurance application filled out based on information taken from another company's policy, paid the first month's premium himself, and received the advance on his commission under false pretense.

**Am Jur 2d, False Pretenses §§ 7, 10, 70-72, 75.**

8. **Criminal Law § 1102 (NCI4th) — sentence — attempt to get witness to perjure herself — aggravating factor properly found**

In a prosecution for obtaining property by false pretenses when defendant allegedly filed false insurance applications in order to get advances on commissions, the trial court properly found as an aggravating factor that defendant attempted to induce a State's witness to perjure herself. ⸗

**Am Jur 2d, Criminal Law §§ 598, 599.**

9. **Jury § 7.14 (NCI3d) — peremptory challenges — no showing of racial discrimination**

Defendant failed to make a prima facie showing of racial discrimination in the State's use of peremptory challenges to remove minority jurors where the prosecutor accepted three out of five potential black jurors and accepted a black alternate; he used three peremptory challenges to excuse two black jurors and one white juror; the white juror and one of the black jurors were excused because they knew the defense attorney; the other black juror was excused because the prosecution thought "she had a hard look on her face"; and he further stated that race did not play a role in his excusing two black jurors.

**Am Jur 2d, Jury § 235.**

APPEAL by defendant from judgment entered 11 April 1989 by *Judge Darius B. Herring* in COLUMBUS County Superior Court. Heard in the Court of Appeals 18 January 1990.

This is an appeal from a conviction for obtaining property by false pretenses in violation of G.S. 14-100. Defendant was employed from January 1987 to May 1987 by the Carolina National Life Insurance Company (hereinafter Carolina National) which was formerly known as the American Educators Life Insurance Company of North Carolina. Defendant, a licensed insurance agent, was involved in selling individual life insurance policies to customers. Under its compensation procedure whenever an agent turned in a completed insurance application with the first month's premium, the company paid the agent a six months' advance on the annual commission which was calculated by multiplying the agent's commission on the monthly premium for the particular policy by six.

On or about 13 March 1987, defendant submitted an application for life insurance on Neacie Newkirk along with the first month's premium of $50.85 to Carolina National's office in Whiteville, N.C. The application indicated that Ms. Newkirk was the purchaser of the policy and her 22-year-old daughter was the principal beneficiary. The application appeared to contain both the signature of defendant and the alleged insured, Neacie Newkirk. Pursuant to the company's compensation procedure, defendant received a check in the amount of $152.46 as an advance on his commission.

On 26 October 1987 defendant was indicted on the charge of obtaining property by false pretenses in violation of G.S. 14-100. Defendant was initially tried on 13 June 1988, but the trial resulted in a mistrial. At the second trial, Ms. Newkirk testified that defendant had previously written a policy for her when he was employed with another company. She stated that she did not sign or authorize anyone to sign the policy application in question. She further testified that she did not pay the initial premium and had not authorized anyone to make payments on her behalf. A. B. Parker, an investigator for the North Carolina Department of Insurance, testified that defendant made a statement to him indicating that he had written applications on several people without their knowledge and had paid the initial premiums himself. Defendant's statement to Parker further indicated that defendant took the personal information on Neacie Newkirk for the Carolina National application from a Farm Bureau application that he wrote for her several years ago. Mr.

Parker further testified that he wrote down defendant's statement which defendant then read but refused to sign. Defendant said he would not sign until after he had conferred with his attorney; however, he told Parker to add the following sentence to the statement: "The basic facts in this is true and untrue due to the slant that it is written." The jury returned a guilty verdict and the trial court sentenced defendant to serve five years' imprisonment. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Gayl M. Manthei, for the State.*

*McGougan, Wright and Worley, by Dennis T. Worley, for defendant-appellant.*

EAGLES, Judge.

Defendant assigns as error the trial court's failure to suppress his confession, denial of a speedy trial, denial of his motion to dismiss, and the State's use of peremptory challenges to remove black jurors. After careful review of the record, we find no error.

[1] Defendant first assigns as error the trial court's denial of defendant's motion to suppress his confession and the subsequent reading of the confession into evidence on the grounds that its admission violated his constitutional rights because the trial court refused to grant a *voir dire* hearing at the second trial. Defendant contends that the trial court erred in reasoning that there was no need for a *voir dire* at the second trial since one had been held during the first trial. Defendant argues that since no error was found in *State v. Thompson,* 52 N.C. App. 629, 279 S.E.2d 125, *disc. rev. denied,* 303 N.C. 549, 281 S.E.2d 400 (1981), where the trial court conducted a *voir dire* hearing on defendant's motion to suppress during both the first trial and second trial, the *Thompson* court intended to require that in a second trial after a mistrial, a *voir dire* hearing must be held in order to determine whether any additional evidence could be brought out which would warrant reconsideration of the order from the first trial. Defendant contends that "[i]n the case at bar, such evidence *could possibly have arisen,* [emphasis added] therefore, Defendant should have been granted a *voir dire* hearing in his second trial." We disagree.

In *State v. Jackson,* 317 N.C. 1, 343 S.E.2d 814 (1986), *cert. granted,* 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed. 2d 133, on remand

to 354 S.E.2d 705, appeal after remand 322 N.C. 251, 368 S.E.2d 838 (1988), the trial court's decision to suppress defendant's confession was reversed by the Supreme Court. On appeal after retrial, defendant acknowledged that the admissibility of the statement had already been decided adversely to him but contended that there was "additional evidence which was not previously before this Court which mandates the reversal of our prior decision." 317 N.C. at 6, 343 S.E.2d at 817. The Supreme Court stated that defendant had failed to show any new evidence justifying a reconsideration of the court's prior ruling. "Since the evidence relating to the admissibility of the inculpatory statement made by defendant is virtually identical to the evidence which was previously before us, the doctrine of 'law of the case' applies to make our prior ruling on this issue conclusive." *Id. See also State v. Wright*, 275 N.C. 242, 166 S.E.2d 681, *cert. denied*, 396 U.S. 934, 90 S.Ct. 275, 24 L.Ed.2d 232 (1969).

Here, at the retrial, defendant failed to produce any additional evidence justifying a reconsideration of the prior ruling on the admissibility of the inculpatory statement. This conclusion is bolstered by defendant's assertion in his brief that additional evidence "could possibly have arisen," such that a *voir dire* hearing in his second trial should have been held. The trial court stated that it had reviewed the previous trial court's order on the admissibility of the statement, concluding that it remained in effect and rejected defendant's offer of proof on the motion. Assuming *arguendo* that the trial court erred in failing to conduct a *voir dire* hearing on the admissibility of the confession during the second trial, any error was not prejudicial because the record reveals that the State has shown beyond a reasonable doubt that the omission did not contribute to the verdict. *See State v. Haskins*, 278 N.C. 52, 62, 178 S.E.2d 610, 616 (1971). There was competent evidence from the documents and testimony of witnesses sufficient to justify the verdict rendered by the jury.

[2] Defendant further argues that the trial court also erred in allowing the "purported in-custody statement" to be read to the jury. Defendant argues that the purported confession was not signed or otherwise admitted by defendant to be correct. Defendant correctly cites *State v. Walker*, 269 N.C. 135, 139, 152 S.E.2d 133, 137 (1967), for the proposition that

"[i]f a statement purporting to be a confession is given by accused, and is reduced to writing by another person, before the written instrument will be deemed admissible as the written confession of accused, he must in some manner have indicated his acquiescence in the correctness of the writing itself. If the transcribed statement is not read by or to accused, and is not signed by accused, or in some other manner approved, or its correctness acknowledged, the instrument is not legally, or *per se*, the confession of accused; and it is not admissible in evidence as the written confession of accused."

*Id.* We note that here the trial court declined to allow the admission of the statement into the evidence because it was not signed by defendant but allowed Mr. Parker to read it during his testimony. On this record we hold that the trial court properly could have admitted defendant's statement into evidence. Here defendant acknowledged the correctness of part of the writing by having Mr. Parker include at the bottom of the confession the statement that some of the facts were true and some were not due to the slant it was written. This acknowledgment was sufficient. The trial court did not err in permitting Parker to read the confession as part of his testimony. Accordingly, defendant's first assignment of error is overruled.

Defendant next assigns as error the trial court's denial of defendant's motion to dismiss for failure to comply with the speedy trial provisions in G.S. 15A-701 *et seq.* Defendant argues that the continuances granted by the trial court between the declaration of the mistrial and the second trial aggregated 299 days which clearly exceeds the 120-day statutory period in G.S. 15A-701(a1)(4). Defendant argues that the interim continuances were not valid exclusions of time under the Speedy Trial Act. We disagree.

Initially we note that

[t]he Speedy Trial Act, G.S. 15A-701 *et seq.*, established a new statutory right to trial within 120 days of the last act triggering the criminal process. It adopted in part provisions of federal speedy trial statutes. Both the federal and the North Carolina statutes allow courts to exclude periods of time from computation of the statutory period. Indeed, the exclusions appear almost to have swallowed up the rule.

Once a defendant shows that the 120-day period under the Act has been exceeded, the State must assume the burden of justifying periods it contends were properly excluded. On appeal, however, the burden shifts: once the motion to dismiss has been denied, defendant-appellant assumes the twin burdens of assuring that the record is properly made up, and showing that error has occurred to his or her prejudice. If the record is deficient or silent upon a particular point, we will presume that the trial judge acted correctly.

*State v. White*, 77 N.C. App. 45, 50, 334 S.E.2d 786, 790-91, *cert. denied*, 315 N.C. 189, 337 S.E.2d 864 (1985). "By producing the orders for continuance, all entered for facially valid reasons, the State carried its burden of going forward with evidence to show that the continuance periods should be excluded from the computation." *State v. Kivett*, 321 N.C. 404, 409, 364 S.E.2d 404, 407 (1988). We note parenthetically that the North Carolina Speedy Trial Act G.S. 15A-701 *et seq.* was repealed by Session Laws 1989, c. 688, s. 1, effective October 1, 1989.

G.S. 15A-701(b)(7) excludes "[a]ny period of delay resulting from a continuance granted by any judge if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding."

[3] Here defendant argues that the "continuances were not valid exclusions of time under the Speedy Trial Act and that Defendant should have been granted a dismissal under the provisions of N.C.G.S. 15A-701." On the contrary, there is no evidence of record suggesting that these delays were the result of dilatory tactics by the State. The first continuance excluded the period from 13 June 1988 through 8 August 1988 because "[d]efendant was tried before a jury this term and a mistrial was declared by the Court because the jury was hopelessly deadlocked and could not reach a verdict." Defendant contends that this exclusion merely excluded the time between the mistrial and the next term of court. Defendant cites *State v. Kivett*, 321 N.C. 404, 364 S.E. 2d 404 (1988), where the Supreme Court found that the trial court erred in excluding the time period between an indictment and the next term of court. The trial court erred in excluding the time period between the declaration of mistrial and the beginning of the next term of court;

however, on this record the error was harmless since this exclusion was not necessary to bring the commencement of the retrial within the statutory 120-day period. *See State v. Kivett, supra.*

[4] The second period excluded was from 8 August 1988 to 31 October 1988. The reason stated was that the trial of other cases prevented the trial of this case and the defendant failed to return to court. The third exclusion, from 31 October 1988 through 28 November 1988, was granted because a witness for the State had a stroke and was unable to be in court. The fourth exclusion, from 28 November 1988 through 23 January 1989, was granted because the witness who had the stroke was recuperating and unable to come to court. Finally, the fifth exclusion from 23 January 1989 until 10 April 1989, was allowed because defense counsel was in federal court and the State's witness was still recovering from a stroke. These were facially valid reasons. On this record there is no evidence to support an attack on the orders granting these continuances. Our opinions have suggested that trial judges should make findings of fact for each period of exclusion which will assist appellate review, but neither the Act nor our opinions require detailed findings. *See State v. White, supra.* Where the trial court finds that the "ends of justice served by granting the continuance outweigh the best interests of the public and defendant in a speedy trial," as was done here for all five continuances, there is no error.

[5] Defendant also contends that the motions to continue were not served upon his attorney of record and that proof of service was not made by the State as required by G.S. 15A-951(b). While G.S. 15A-951(b) does require that each written motion be served upon the attorney of record of the opposing party or upon the defendant if he is not represented by counsel, our Supreme Court noted in *State v. Sams,* 317 N.C. 230, 345 S.E.2d 179 (1986), "[a]n irregular order, one issued contrary to the method of practice and procedure established by law, is voidable." *Id.* at 235, 345 S.E.2d at 183. "An order issued without notice where actual notice is required is irregular and thus voidable, but it is not void. It stands until set aside by a motion to vacate." *Id.* at 236, 345 S.E.2d at 183. It may not be attacked collaterally under the Speedy Trial Act. *See id.* Here there was no motion to vacate any of the orders and they remain in effect. Accordingly, this assignment of error must also fail.

STATE v. MELVIN

[99 N.C. App. 16 (1990)]

[6]  Thirdly, defendant assigns as error the admission into evidence of Parker's testimony as to information contained in defendant's confession concerning other allegedly false applications submitted by defendant and the trial court's instruction to the jury on these prior bad acts. Defendant contends that the evidence through the "purported in-custody statement" was not sufficient to prove intent or design and should not have been admitted. He also contends that the jury should not have been instructed on evidence of prior bad acts. We disagree.

In *State v. Wilson*, 57 N.C. App. 444, 291 S.E.2d 830, *disc. rev. denied*, 306 N.C. 563, 294 S.E.2d 375 (1982), defendant was charged with obtaining money under false pretenses. In *Wilson*, defendant promised to assist potential home buyers in obtaining a house if they paid him a down payment. Defendant failed to help them obtain a house and did not refund their down payment. During trial, the trial court admitted evidence that defendant had made similar representations to other parties and did not obtain the houses for them or refund their down payments either. This court held that this evidence was properly admitted.

> To be relevant, evidence must have some logical tendency to prove a fact at issue in the case. "[E]vidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact."

> One of the essential elements of the crimes with which defendant was charged was intent to cheat and defraud *at the time* defendant represented . . . that he would assist them in obtaining houses. Evidence that defendant previously had represented to some five other parties that he would help them obtain houses, and that they had neither obtained houses nor received their money back, was relevant to show defendant's fraudulent intent in his transactions with the [victims].

*Id.* at 450, 291 S.E.2d at 834.

> Such relevant evidence is not rendered inadmissible merely because it may show the commission of a separate offense. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite

mental intent or state, even though the evidence discloses the commission of another offense by the accused.

*Id.* at 451, 291 S.E.2d at 834.

Here, the evidence of prior bad acts was offered to show that the act in question was done knowingly with the intent to cheat or defraud. The trial court admitted the evidence as "proof of opportunity, intent, preparation, and plan under Rule 404(b)." Also, the trial court gave limiting instructions to the jury that it was to consider the evidence solely for the purpose of showing that defendant had the intent, knowledge and "that there existed in his mind a plan, scheme, system, or design involving the crime charged in this case." ·Accordingly, this assignment of error is overruled.

[7] Defendant further assigns as error the trial court's denial of his motion to dismiss at the close of all the evidence on the grounds that the State failed to prove each element of the offense and failed to properly allege a violation of G.S. 14-100. Defendant contends that the State failed to prove the intent to defraud. Defendant asserts that the testimony at trial only revealed that an application was submitted and the first month's premium was paid and did not reveal whether further premiums were paid on the policy. Defendant further contends that "[t]here is no evidence that Mr. Melvin forged the application, paid the premium himself, deceived or defrauded Ms. Newkirk in any way, or that he deceived and defrauded the company in any way." Defendant argues that "no evidence was offered to show that Mr. Melvin intended to deceive or defraud either Ms. Newkirk or Carolina National Life Insurance Company." Defendant contends that the State failed to prove beyond a reasonable doubt that he obtained the six months' advanced commission by means of false pretense which was calculated to deceive and did deceive. We disagree.

"A motion for [directed verdict] is properly denied if there is any competent evidence to support the allegations contained in the bill of indictment; and all the evidence which tends to sustain those allegations must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974). G.S. 14-100(a) provides that

STATE v. MELVIN

[99 N.C. App. 16 (1990)]

> If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony, . . .; and upon the trial of any such indictment, it shall not be necessary to prove either an intent to defraud any particular person or that the person to whom the false pretense was made was the person defrauded, but it shall be sufficient to allege and prove that the party accused made the false pretense charged with an intent to defraud.

" 'Intent [,however,] is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.' '[I]n determining the presence or absence of the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged . . . .' " *State v. Hines*, 54 N.C. App. 529, 533, 284 S.E.2d 164, 167 (1981) (citations omitted). "Thus, '[i]t was for the jury to determine, under all circumstances, defendant's ulterior criminal intent.' " *Id.* (Citation omitted.) "The gist of obtaining property by false pretense is the false representation of a subsisting fact intended to and which does deceive one from whom property is obtained. The state must prove, as an essential element of the crime, that defendant made the misrepresentation as alleged." *State v. Linker*, 309 N.C. 612, 614-15, 308 S.E.2d 309, 310-11 (1983).

Here, the jury found that defendant had the requisite intent sufficient to convict him of obtaining property by false pretense. Defendant contends that if further premiums were paid, then no fraud was perpetrated upon the company. On the contrary, fraud was perpetrated at the time defendant turned in the application and premium on behalf of Neacie Newkirk which she neither paid nor authorized to be paid on her behalf. While defendant did in fact pay the premium himself, the company then paid him six months' advance on his commission. We find the evidence presented by the State sufficient to support a permissible inference that defendant intended to cheat or defraud when without authority he submitted the premium and application filled out based on information

taken from another company's policy and received the advance on his commission under false pretense. There was sufficient competent evidence for the jury to determine defendant's ulterior criminal intent. Accordingly, this assignment of error is overruled.

[8]  Next, defendant assigns as error the trial court's finding as an aggravating factor that defendant attempted to induce the State's witness, Neacie Newkirk Boykin, to perjure herself. Defendant contends that there was no credible evidence to support the aggravating factor. We disagree.

> If a sentence greater than the presumptive term is to be imposed upon a defendant, the trial judge must make written findings of aggravating and mitigating factors. The record must specifically reflect each factor in mitigation or aggravation which the trial judge finds proven by a preponderance of the evidence. G.S. § 15A-1340.4 expressly distinguishes between factors which the General Assembly requires trial judges to consider ("statutory factors") and other, "non-statutory," factors which *may* be considered. Regarding non-statutory factors that are proven by a preponderance of the evidence and are reasonably related to the purposes of sentencing, such as conduct while awaiting sentencing, the trial judge *may* consider them, but such consideration is not required.

*State v. Cameron*, 314 N.C. 516, 518-19, 335 S.E.2d 9, 10 (1985). "A ruling committed to a trial judge's discretion will be upset only upon a showing that it could not have been the result of a reasoned decision." *Id.*, 335 S.E.2d at 11.

On this record we conclude that the State did in fact prove beyond a preponderance of the evidence that defendant attempted to induce Ms. Newkirk to perjure herself. At the sentencing hearing when Ms. Newkirk was shown the application for insurance, she stated that she had not discussed the application with defendant but that defendant had approached her downstairs in the courthouse prior to the beginning of the first trial in June 1988. She testified that she did not "remember the exact words, but it was something to the effect that he said he was in trouble and he needed me to say on the witness stand that we had discussed the policy." She did not remember him saying anything else. The trial court then found as a factor in aggravation that "defendant at a prior trial, which resulted in a mistrial, attempted to induce

the State's witness, Neacie Newkirk Boykin, to perjure herself so as to defeat the ends of justice." On this record, we find no error.

[9]   Finally, defendant assigns as error the trial court's overruling of his objection to the State's use of peremptory challenges to remove minority jurors. Defendant contends that he made out a prima facie showing of racial discrimination in the jury selection under the standards of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant argues that under *Batson* he must show the following: "that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that lends itself to potential abuse; and third, the defendant must show that these facts and any other relevant circumstances . . . raise an inference that the prosecutor used peremptory challenges to exclude prospective jurors on the basis of race." Defendant contends that since he is black and the prosecutor exercised peremptory challenges to exclude two black prospective jurors, without more, an inference is raised that the prosecutor used the peremptory challenges to exclude the prospective jurors because they were black. We disagree.

In *State v. Jackson*, 322 N.C. 251, 254, 368 S.E.2d 838, 840 (1988) our Supreme Court cited *Batson, supra*, for the proposition that "a prima facie case of purposeful discrimination in the selection of a petit jury may be established on evidence concerning the prosecutor's exercise of peremptory challenges at the trial."

> In order to establish such a prima facie case the defendant must be a member of a cognizable racial group and he must show the prosecutor has used peremptory challenges to remove from the jury members of the defendant's race. The trial court must consider this fact as well as all relevant circumstances in determining whether a prima facie case of discrimination has been created. When the trial court determines that a prima facie case has been made, the prosecution must articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be tried which give a neutral explanation for challenging jurors of the cognizable group. The prosecutor's explanation need not rise to the level of justifying a challenge for cause. At this point the trial court must deter-

mine if the defendant has established purposeful discrimination. Since the trial court's findings will depend on credibility, a reviewing court should give those findings great deference.

*Id.* at 254-55, 368 S.E.2d at 840.

Here, there are other relevant circumstances to be considered. The prosecutor accepted three out of five potential black jurors and accepted a black alternate. The prosecutor used three peremptory challenges to excuse two black jurors and one white juror. The white juror and one of the black jurors were excused because they knew the defense attorney. The other black juror was excused because "she had a hard look on her face, and . . . she made me [prosecutor] feel uncomfortable the way she was looking. She just worried me the way she was looking." The prosecutor further stated that race did not play a role in his excusing the two black jurors. The trial court then found that the peremptory challenges were exercised without racial prejudice. On this record, we find no evidence of invidious discrimination and conclude that the trial court did not err in refusing to grant defendant's motion.

No error.

Judges PHILLIPS and ORR concur.