STATE OF NORTH CAROLINA v. TERRELL DAVEZ CORNELIUS

No. COA11-94

(Filed 6 March 2012)

**1. Confessions and Incriminating Statements—statements in hospital—medication—defendant alert and oriented**

The trial court did not err in denying defendant's motion to suppress his statements made in a hospital while medicated where the trial court made extensive findings that defendant was alert and oriented based on the testimony of the officer, the hospital records, and the recorded statements, and those statements supported the conclusion that defendant's statements were voluntary.

**2. Estoppel—offensive collateral estoppel— felony murder— underlying felony—established at first trial**

The defendant in a second felony murder trial was not entitled to retry the issue of whether defendant had committed the underlying felony of first-degree burglary where the jury in the first trial heard the evidence, deliberated, and without error returned a verdict of guilty of first-degree burglary. The offensive use of collateral estoppel against a defendant was established by *State v. Dial*, 122 N.C. App. 298, and defendant did not cite a case suggesting that *Dial* was overruled.

Appeal by defendant from judgment entered 11 February 2010 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 29 September 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General William P. Hart, Sr. and Special Deputy Attorney General Melissa L. Trippe, for the State.*

*Michael E. Casterline for defendant-appellant.*

GEER, Judge.

Defendant Terrell Davez Cornelius appeals from his conviction of felony murder. In defendant's first trial on the charges of felony murder and first degree burglary, a jury found him guilty of first degree burglary but could not reach a verdict on the felony murder charge. The trial court declared a mistrial on the felony murder charge, and defendant was retried on that charge only.

In this appeal, defendant primarily argues that the trial court in the second trial erred in applying offensive collateral estoppel to bar him from relitigating, for purposes of the felony murder charge, whether he committed the felony of first degree burglary. Although defendant argues that offensive collateral estoppel should not apply in criminal cases, this Court held otherwise in *State v. Dial*, 122 N.C. App. 298, 470 S.E.2d 84 (1996). Because we also find defendant's remaining arguments unpersuasive, we hold that defendant received a trial free of prejudicial error.

## Facts

The State's evidence tended to show the following facts. Rodney Fraley, Danny Cordray, and defendant went to Leon Conrad's house to rob him late on the evening of 8 November 2007 or early in the morning of 9 November 2007. All three men were armed with semi-automatic weapons. Fraley had suggested the robbery after spending the day with Conrad and seeing $50,000.00 in cash, which he expected to be in Conrad's truck. When the men found the truck locked, defendant kicked in the main front door. As Cordray and defendant entered the residence, both of them shot at Conrad, and Conrad shot back.

Conrad ultimately died of gunshot wounds to his chest. Defendant, who was shot in the hands and abdomen, was admitted to Wake Forest University Baptist Medical Center on 9 November 2007 between 1:40 and 1:50 a.m. Defendant underwent exploratory surgery to make sure there were no injuries inside his abdomen. In addition, an orthopedic surgeon addressed the injuries to his hands. Defendant was then moved to a non-ICU, standard bed in the hospital.

At 11:05 a.m. that morning, Detective Michael Poe of the Winston-Salem Police Department visited defendant in the hospital. Defendant's mother and sister were in the room with him. In a recorded statement, defendant told Detective Poe that he had been the victim of a robbery. However, after Detective Poe later learned the name of another individual involved in the shooting, Detective Poe went back to speak with defendant again that afternoon around 3:40 p.m. During this conversation, which was also recorded, defendant admitted that his previous statement had not been truthful and that he was shot while attempting to rob Conrad. Defendant also admitted to kicking in the door at Conrad's home and to firing a gun.

Detective Poe visited defendant in the hospital a third time three days later on 12 November 2007. The purpose of this interview, also recorded, was to clarify some issues. This time, defendant admitted that he, Fraley, and Cordray had wanted to steal $50,000.00 from Conrad.

Defendant was indicted for first degree murder on 7 July 2008. Defendant was later indicted for first degree burglary with two aggravating factors on 10 November 2008. Defendant subsequently filed a motion to suppress the statements made in the hospital as involuntary. The trial court denied the motion in an order filed 26 February 2009. Consequently, the jury was allowed to hear at trial the recordings of defendant's three statements.

A jury found defendant guilty of first degree burglary on 11 March 2009. It was, however, unable to reach a unanimous verdict with respect to the felony murder indictment, and the trial court, therefore, declared a mistrial on the murder charge. The judge also granted a prayer for judgment continued as to the first degree burglary sentence pending a second trial on the first degree murder charge. At the second trial, defendant was found guilty of felony murder and was sentenced to life in prison without parole. Defendant timely appealed to this Court.

I

[1] Defendant first contends that the trial court erred in denying his motion to suppress the three statements made while he was in the hospital. Defendant argues that the medication he received in the hospital rendered these statements involuntary and, therefore, inadmissible.

"[T]he standard of review in evaluating a trial court's ruling on a motion to suppress is as follows: . . . . Its findings of fact are conclusive on appeal if supported by competent evidence, even if the evi-

dence is conflicting. Conclusions of law that are correct in light of the findings are also binding on appeal." *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000) (internal citations and quotation marks omitted).

In this case, with respect to the voluntariness of defendant's statements, the trial court made the following findings of fact. Defendant was alert, oriented, and able to interact with others throughout his hospital stay and at the time of each of the three interviews. Defendant was able to describe events in great detail, including names, locations, and statements made by others. Defendant also had the mental acuity to concoct a story explaining his gunshot wound but removing him from the home invasion and homicide. The court further noted that defendant's family remained in the hospital room for two of the three interviews and did not request that those interviews be terminated. Finally, after determining that the evidence failed to show that defendant's will was overborne or his capacity for self-determination critically impaired, the trial court concluded that defendant's statements were voluntary.

Our review of the record indicates that these findings are supported by defendant's hospital records and Detective Poe's testimony. The State presented evidence that at the time of the first statement, the side effects of Dilaudid, which he had been administered, would have worn off. While defendant was still able to self-administer morphine, there was evidence he was taking no medication at all by the time of his final statement. In addition, nurses visited defendant every four hours, and defendant's medical records indicated that he was consistently at maximum alertness and orientation. There were no notes in defendant's medical records suggesting that he was confused or disoriented to any degree or that he was going in and out of consciousness.

Detective Poe testified that, even in the first interview, defendant was able to understand questions, responded in a coherent manner, and did not lapse into unconsciousness. He also testified that during the second interview, defendant was "[v]ery detailed and coherent" and did not fall asleep. Regarding defendant's third interview, Detective Poe testified that defendant "elaborated on things" and "was able to . . . tell us what he wanted to tell us on his own." Defendant did not appear to be on any type of drug, was coherent, and "made sense." In addition to Detective Poe's testimony, the trial court also had the opportunity to hear all three recorded interviews.

The court could, therefore, assess on its own the coherency of defendant's statements, as well as the credibility of Detective Poe's testimony.

Defendant does not specifically contest the sufficiency of this evidence to support the trial court's findings. Instead, in support of his contention that "his capacity for self-determination and self-direction [were] overborne by the narcotics he was administered for pain," he points to his mother's testimony that he seemed lethargic and confused and his own testimony that he does not remember making the statements. It is, however, well established that a trial court's " 'findings of fact are conclusive on appeal if supported by competent evidence, *even if the evidence is conflicting.*' " *Id.*, 532 S.E.2d at 501 (emphasis added) (quoting *State v. Peterson*, 347 N.C. 253, 255, 491 S.E.2d 223, 224 (1997)). " '[A] trial court's resolution of a conflict in the evidence will not be disturbed on appeal . . . .' " *Id.*, 532 S.E.2d at 502 (quoting *State v. Steen*, 352 N.C. 227, 237, 536 S.E.2d 1, 7 (2000)).

Since the trial court's findings are supported by competent evidence, we next address whether those findings support the trial court's conclusion that the statements were voluntary. In *State v. McCoy*, 303 N.C. 1, 19-20, 277 S.E.2d 515, 529 (1981), the defendant similarly contended that his statement made while under the influence of pain killers in the emergency room was involuntary. Our Supreme Court noted:

> [T]he trial court conducted a lengthy *voir dire* hearing concerning defendant's mental and physical condition at the time he made this statement. The state's evidence tended to show that defendant was alert, responsive and coherent. His attending physician gave permission for defendant to be interviewed. Defendant "did not appear to be sleepy or confused nor did he hesitate to answer questions at any time." The trial court made extensive findings of fact in accord with this evidence. Defendant did not except to any of these findings.

*Id.* The Court then held that "[f]rom these findings the trial court correctly concluded that the statement 'was made freely, voluntarily, understanding [sic] and knowingly . . . .' " *Id.* at 20, 277 S.E.2d at 529. The Court concluded, therefore, that the trial court properly admitted the defendant's incriminating statements.

In this case, the trial court made comparable findings based on similar evidence. Under *McCoy*, therefore, the trial court's findings in this case support its conclusion that defendant's three statements

were voluntary and admissible. *See also State v. McKoy*, 323 N.C. 1, 17, 372 S.E.2d 12, 20 (1988) (holding that trial court did not err in admitting statements made two hours after defendant's blood alcohol level was 0.26 when trial court found that, during questioning, the defendant was coherent and that his answers " 'were extremely reasonable, responsive and appropriate' "), *vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990). Any intoxication remaining from defendant's medication "was relevant to [defendant's] credibility, which was a question for the jury." *Id.* at 23, 372 S.E.2d at 24.

Defendant, however, points to *State v. Williford*, 275 N.C. 575, 576-77, 169 S.E.2d 851, 853 (1969), in which the defendant had been shot in the ankle when leaving a robbery. An officer spoke with the defendant in the emergency room at the hospital, and the defendant confessed. *Id.* at 577, 169 S.E.2d at 853. The defendant then attempted to have the confession suppressed as being involuntary. *Id.* The Supreme Court did not, however, exclude the confession, but rather ordered a new trial because the trial court had failed to make sufficient findings of fact regarding "the immediate circumstances and conditions" of the statements to support its conclusion that the confession was voluntary. *Id.* at 582, 169 S.E.2d at 856.

Indeed, the Supreme Court, in *Williford*, held that "the admissibility of a confession is not, *ipso facto*, rendered involuntary because defendant was suffering from physical injuries and resulting pain at the time he made the confession. These are circumstances to be taken into consideration by the jury in weighing the evidence." *Id.* at 579-80, 169 S.E.2d at 855. Because the trial court in this case made the necessary findings, *Williford* establishes that the circumstances regarding defendant's injury and pain medication were for the jury to weigh.

Defendant also cites *Logner v. State of North Carolina*, 260 F. Supp. 970 (M.D.N.C. 1966), a decision granting a defendant's petition for writ of habeas corpus. The court concluded that the defendant's statements, which were made after having consumed large amounts of alcohol and amphetamines, were involuntary. *Id.* at 974. The court noted that multiple police officers testified that the defendant was obviously drunk during questioning. *Id.* at 973, 975. In addition, initially, when the defendant was arrested for driving under the influence, the "investigating officer noted he was too drunk to make a statement." *Id.* at 975. The court vacated the defendant's conviction based on its conclusion that the defendant, while obviously severely

intoxicated, specifically "was interrogated for the purpose of eliciting a confession." *Id.*

The trial court's findings in this case—and the evidence support- ing those findings—do not indicate a comparable level of intoxication and, therefore, we do not believe *Logner* supports a reversal of the trial court's decision in this case. Based on the testimony of Detective Poe, the hospital records, and the recorded statements, the trial court made extensive findings that defendant was alert and oriented. Those findings in turn support the trial court's conclusion that defendant's statements were voluntary. We, therefore, hold the trial court did not err in denying defendant's motion to suppress.

## II

**[2]** Defendant next contends that his right to a trial by jury was vio- lated when the trial court allowed offensive collateral estoppel to be used to establish the underlying felony for defendant's felony murder conviction. At defendant's second trial, the jury was instructed, with respect to the charge of felony murder, that "because it has previ- ously been determined beyond a reasonable doubt in a prior criminal proceeding that Mr. Cornelius committed first degree burglary on November 9th, 2007, . . . you should consider that this element [of felony murder (that defendant committed the felony of first degree burglary)] has been proven to you beyond a reasonable doubt."

While defendant cites cases from other jurisdictions holding that offensive collateral estoppel is inappropriate in criminal cases, it appears that this Court's decision in *State v. Dial*, 122 N.C. App. 298, 470 S.E.2d 84 (1996), is controlling. In *Dial*, the defendant, who was indicted for first degree murder, contended that the State could not prove the murder occurred in North Carolina and, therefore, North Carolina's courts did not have jurisdiction. *Id.* at 302, 470 S.E.2d at 87. In the defendant's first trial, the trial court submitted the issue of jurisdiction to the jury. *Id.* Although the jury returned a special ver- dict finding that North Carolina had jurisdiction, it was unable to reach agreement on the defendant's guilt. *Id.*

At the defendant's second trial, the trial court concluded that the special verdict had resolved the issue of jurisdiction and denied defendant's motion to set aside that verdict and dismiss the case for lack of jurisdiction. *Id.* On appeal, the defendant "argue[d] that the special verdict was not binding at his second trial so that the State should have been required to prove, beyond a reasonable doubt, the

existence of jurisdiction to the same jury deciding his guilt or innocence at his second trial." *Id.* at 305, 470 S.E.2d at 88.

In rejecting this argument, this Court noted:

> The question before us, then, is whether the trial court's acceptance of the jury's special verdict finding that North Carolina has jurisdiction at defendant's first trial, prior to declaring a mistrial by reason of the jury's inability to agree upon the issue of guilt or innocence, precludes defendant from relitigating jurisdiction at his second trial. The question is apparently one of first impression. We believe, however, that it is resolved by application of the settled principles of *res judicata* and collateral estoppel.

*Id.*, 470 S.E.2d at 89. The Court explained:

> The doctrines of *res judicata* and collateral estoppel apply to criminal, as well as, civil proceedings, and their application against a criminal defendant does not violate the defendant's rights to confront the State's witnesses or to a jury determination of all facts.
>
> In the present case, all the requirements for precluding relitigation of the jurisdiction issue have been met: (1) the parties are the same; (2) the issue as to jurisdiction is the same; (3) the issue was raised and actually litigated in the prior action; (4) jurisdiction was material and relevant to the disposition of the prior action; and (5) the determination as to jurisdiction was necessary and essential to the resulting judgment.

*Id.* at 306, 470 S.E.2d at 89 (internal citations omitted). The Court, therefore, held "that the [trial] court's acceptance of that special verdict of the jury at his first trial finding that North Carolina has jurisdiction precludes defendant from relitigating the issue of jurisdiction at his second trial." *Id.*

Defendant acknowledges that *Dial* "ostensibly affirmed the offensive use of collateral estopped against a defendant," but argues that it is "easily distinguished" because the jury, in that case, "only resolved one very limited question: the location of the crime." To the contrary, that purportedly "limited" question was critical to any conviction—it resolved whether North Carolina had jurisdiction to prosecute the defendant at all. *See In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) (holding that question of jurisdiction

is " 'the most critical aspect of the court's authority to act' " (quoting *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987))). Since the defendant in *Dial* could not be convicted of murder without the State's proving beyond a reasonable doubt the element—jurisdiction—decided in the first trial, we find *Dial* equally applicable when, as here, the prior verdict accepted by the trial court established an element of the crime of felony murder.

Defendant further argues that, regardless of *Dial*, the United States Supreme Court has intimated (without holding) that collateral estoppel in a criminal case is inappropriate, pointing to a footnote in the plurality opinion of *United States v. Dixon*, 509 U.S. 688, 710 n.15, 125 L. Ed. 2d 556, 577 n.15, 113 S. Ct. 2849, 2863 n.15 (1993). In that footnote, the plurality addressed a concern by the dissenting opinion that the plurality's overruling of the "same conduct" Double Jeopardy test established by *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990), would result in prosecutors bringing separate prosecutions to perfect their case. *Dixon*, 509 U.S. at 710 n.15, 125 L. Ed. 2d at 577 n.15, 113 S. Ct. at 2863 n.15. In dismissing that concern, the plurality opinion noted that prosecutors would "have little to gain and much to lose from such a strategy. Under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), an acquittal in the first prosecution might well bar litigation of certain facts essential to the second one—though a conviction in the first prosecution would not excuse the Government from proving the same facts the second time." *Id.*

This plurality opinion was decided, however, in 1993—three years *before Dial* was decided in 1996. Because defendant has not cited a case suggesting that *Dial* was overruled, and *Dixon* does not squarely conflict with *Dial*, we are bound by *Dial*. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).

Moreover, the holding in *Dial* is consistent with *State v. O'Neal*, 67 N.C. App. 65, 312 S.E.2d 493, *aff'd as modified on other grounds*, 311 N.C. 747, 321 S.E.2d 154 (1984). In *O'Neal*, the jury in the first trial reached agreement on six special verdict issues but could not agree on the seventh issue. *Id.* at 66, 312 S.E.2d at 494. The defendant requested a mistrial on the seventh issue alone, but the trial court declared a mistrial on all issues. *Id.* at 67, 312 S.E.2d at 494. On appeal, this Court concluded that because "the jury has heard the evidence, deliberated, and without error returned a verdict as to the other six issues, no new trial is required on these issues" and

"[n]either the State *nor defendant* is entitled to one." *Id.* at 71, 312 S.E.2d at 497 (emphasis added).

Here, a jury "heard the evidence, deliberated, and without error returned a verdict," *id.*, of guilty of first degree burglary. The defendant was not, therefore, entitled to retry in the second felony murder trial the issue whether defendant had committed the felony of first degree burglary. Indeed, defendant does not dispute that if we conclude that offensive collateral estoppel can apply in a criminal case, then the trial court properly instructed the jury. Accordingly, we find no error in defendant's trial.

No error.

Judges STROUD and THIGPEN concur.