STATE v. MACON

[227 N.C. App. 152 (2013)]

─────────

STATE OF NORTH CAROLINA
v.
MADISA BENEA MACON, Defendant

No. COA12-812

Filed 7 May 2013

1. **Criminal Law—retrial following mistrial—de novo—refusal to give instruction at first trial—not binding at second**

   The judge in a driving while impaired prosecution following a mistrial did not err by giving an instruction that refusal to take an alcohol breath test could be considered as evidence of guilt even though the judge in the first trial had refused to give the instruction. A trial following a mistrial is *de novo*, unaffected by rulings made during the original trial, and the rule that one superior court judge cannot overrule another in the same matter does not apply.

Moreover, the doctrine of collateral estoppel applies only to an issue of ultimate fact determined by a final judgment. In this case, since there was no final judgment because of the mistrial, collateral estoppel cannot apply.

**2.  Motor   Vehicles—driving   while   impaired—instructions— refusal to take alcohol breath test—sufficient evidence**

The judge in a driving while impaired prosecution that followed an initial mistrial did not err by giving an instruction that refusal to take the alcohol breath test could be considered as evidence of guilt where there was evidence supporting the instruction. Evidence of defendant's failure to follow instructions regarding the breath test was evidence that defendant refused to take the test, despite the fact that she did blow into the instrument. The officer's testimony that he did not mark the test as a refusal immediately following administration of the test and did not report defendant's test as a refusal to the Department of Motor Vehicles went only to the weight and credibility of the evidence.

Appeal by defendant from judgment entered 25 January 2012 by Judge R. Allen Baddour in Orange County Superior Court. Heard in the Court of Appeals 12 December 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Carrie D. Randa, for the State.*

*Richard Croutharmel for defendant-appellant.*

GEER, Judge.

Defendant Madisa Benea Macon appeals from her conviction of driving while impaired ("DWI"). Following the declaration of a mistrial when the jury could not reach a verdict on the DWI charge, defendant was retried. During the retrial, the trial judge instructed the jury that it could consider her refusal to take a breath test as evidence of her guilt even though, during defendant's first trial, a different trial judge had ruled that the instruction was not supported by the evidence. Although defendant argues that the second trial judge was bound by the first judge's legal ruling based on collateral estoppel and the principle that one superior court judge may not overrule another judge, we hold that neither doctrine applies to legal rulings in a retrial following a mistrial.

**STATE v. MACON**

[227 N.C. App. 152 (2013)]

## Facts

The State's evidence tended to show the following facts. At approximately 4:00 a.m. on 24 April 2010, Officer Gideon LeCraft of the Chapel Hill Police Department was driving on Franklin Street in Chapel Hill, North Carolina, when he noticed a vehicle stopped at a traffic light in the opposite lane with its lights off. Officer LeCraft flashed his lights to inform the driver that his or her lights were off. When the light turned green, the driver remained stopped for roughly 30 seconds, the windshield wipers on the vehicle came on, and then the vehicle proceeded forward. Because the vehicle's lights remained off, Officer LeCraft made a U-turn, drove up behind the vehicle, activated his blue lights, and initiated a traffic stop.

Officer LeCraft approached the vehicle and asked defendant, the driver, for her license and registration. Officer LeCraft smelled a "slight to moderate" odor of alcohol coming from the vehicle as well as an odor of alcohol coming from defendant's breath. He further observed that defendant's eyes "were red, glassy" and that defendant's speech was "sort of slurred." Defendant also had difficulty locating her license in her wallet until Officer LeCraft identified it for her. Officer LeCraft also noted that there was a passenger in the vehicle who appeared to be "extremely intoxicated."

Officer LeCraft then administered certain field sobriety tests. He first conducted the Horizontal Gaze Nystagmus ("HGN") test. Of the six clues of impairment Officer LeCraft was trained to identify when performing the HGN test, he observed five in defendant. Defendant then exhibited clues of impairment during the "walk-and-turn" test by failing to maintain her balance, stepping off the line, and making an improper turn. Defendant failed to comply with instructions during the "one-legged stand" test by counting incorrectly and putting her foot down. Defendant additionally tested positive for alcohol on the officer's portable breath test instrument. Officer LeCraft then arrested defendant for DWI.

Officer Charles Shehan of the Chapel Hill Police Department responded to the traffic stop as a "cover officer." Once defendant was arrested and transported to the police department, Officer Shehan conducted a chemical breath test on defendant. Officer Shehan read defendant her rights regarding the test and explained the proper method for completing the test. Defendant blew into the instrument, but allowed her breath to taper off such that the instrument could not register a breath sample. On two more tries, defendant, in a similar manner, provided insufficient samples of her breath. The instrument then "timed out."

Defendant was given a second opportunity to provide breath samples, but she again provided three insufficient samples, each time allowing her breath to taper off prematurely. As a result, the instrument timed out a second time. Officer Shehan believed defendant was not attempting to provide a sufficient breath sample. The officer did not mark defendant's breath test as a refusal although he could have. Based on his observation of defendant, Officer Shehan formed the opinion that defendant had consumed a sufficient quantity of alcohol as to appreciably impair her mental and physical abilities.

On 24 April 2010, defendant was cited for DWI and failing to operate a vehicle's headlamps between sunset and sunrise. Defendant was convicted of DWI in Orange County District Court. Defendant appealed to superior court for a trial de novo. Following a trial on 22 July 2011 (the "2011 trial"), the jury found defendant guilty of failing to burn headlamps, but it was unable to reach a verdict as to the DWI charge. The presiding judge, Judge Michael R. Morgan, accordingly declared a mistrial as to the DWI charge.

On 23 January 2012, defendant was again tried for DWI in superior court. At the second trial (the "2012 trial"), Cyril Broderick testified for the defense that he is the owner of Cafe Beyond, a bar located on Franklin Street in Chapel Hill. Defendant came to his bar on 24 April 2010 and stayed at the bar for roughly two hours and 30 minutes, but did not drink alcohol at the bar. Defendant's interactions with friends and her motor skills appeared "fine" to Mr. Broderick.

Between 2:30 and 2:40 a.m., Mr. Broderick asked defendant to give his friend "Roger" a ride home because Roger had been drinking, and defendant had not and was not impaired. When Mr. Broderick was driving himself home roughly 15 minutes later, he saw defendant's car pulled over for a traffic stop. He called the police department to ask if defendant was in custody, was informed that she was, and drove to the police department. Upon arriving, Mr. Broderick saw defendant crying and defendant told him she was "very, very tired, had a long day, [and] that she had been up since 4:00 in the morning." Mr. Broderick again observed that defendant's motor skills were "fine," and she did not appear impaired.

Following the 2012 trial, the jury found defendant guilty of DWI. The presiding judge, Judge R. Allen Baddour, sentenced defendant to a term of 60 days imprisonment, but suspended the sentence and placed defendant on 12 months of supervised probation. Defendant timely appealed to this Court.

## Discussion

Defendant argues on appeal that the trial court erred by instructing the jury that it could consider whether defendant refused to submit to a breath test in deciding her guilt for DWI. At the 2011 trial, Judge Morgan ruled that a jury instruction on defendant's refusal to submit to a breath test was not supported by the evidence. At the 2012 trial, however, Judge Baddour ruled, over defendant's objection, that the refusal instruction was supported by the evidence and, accordingly, gave the instruction.

**[1]** Defendant first contends that Judge Baddour was barred from giving the refusal instruction at the 2012 trial because, defendant asserts, "rulings made as a matter of law in the first trial are binding on the judge in a second trial, even when the first trial resulted in a mistrial." Defendant's argument is primarily premised upon her contention that the doctrine of collateral estoppel applied here to bar the State from re-litigating Judge Morgan's ruling that the refusal instruction was not warranted based on the evidence presented in the 2011 trial. Defendant's argument also appears to be partially premised upon the rule that " 'no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.' " *Smithwick v. Crutchfield*, 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987) (quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)).

We find *State v. Harris*, 198 N.C. App. 371, 679 S.E.2d 464 (2009), controlling with respect to both prongs of defendant's argument. First, the rule that one superior court judge cannot overrule another in the same matter does not apply to rulings made following a mistrial because, as this Court explained in *Harris*, "[w]hen the trial court declares a mistrial, 'in legal contemplation there has been no trial.' " *Id.* at 376, 679 S.E.2d at 468 (quoting *State v. Sanders*, 347 N.C. 587, 599, 496 S.E.2d 568, 576 (1998)). Thus, "[w]hen a defendant's trial results in a hung jury and a new trial is ordered, the new trial is '[a] trial *de novo*, unaffected by rulings made therein during the [original] trial.' " *Id.* (first alteration added) (quoting *Burchette v. Lynch*, 139 N.C. App. 756, 760, 535 S.E.2d 77, 80 (2000)). *See also Burchette*, 139 N.C. App. at 760, 535 S.E.2d at 80 ("[A] 'mistrial results in nullification of a pending jury trial.' " (quoting 75B Am. Jur. 2d *Trial* § 1713 (1992))).

In *Harris*, the defendant was charged with, among other offenses, possession with intent to sell or deliver cocaine and, at his first trial, the jury deadlocked on that charge causing the trial judge, Judge Henry E. Frye, Jr., to declare a partial mistrial. 198 N.C. App. at 373, 374, 679 S.E.2d at 466. At the first trial, Judge Frye excluded certain evidence

under Rule 404(b) of the North Carolina Rules of Evidence. *Id.* at 373, 679 S.E.2d at 466. The defendant was retried and, at his second trial, Judge Judson D. DeRamus, Jr. ruled that the same evidence was admissible under Rule 404(b). *Id.* at 374, 679 S.E.2d at 466.

On appeal, the defendant in *Harris* argued that Judge DeRamus erred in admitting the evidence both because Judge DeRamus was bound by Judge Frye's ruling regarding admissibility of the evidence and because admission of the evidence was barred by collateral estoppel. *Id.* at 375, 679 S.E.2d at 467. The Court rejected the arguments, reasoning that "[w]hen Judge Frye declared a mistrial on the charge of possession with intent to sell or deliver cocaine, his evidentiary rulings on the 404(b) evidence no longer had legal effect." *Id.* at 376, 679 S.E.2d at 468. Accordingly, the Court held, "neither the doctrine of collateral estoppel nor the one judge overruling another rule can apply to th[at] ruling." *Id.*

The defendant in *Harris* further argued that Judge DeRamus erred by failing to follow a ruling made by Judge Frye granting the defendant's motion to record all of the proceedings. *Id.* at 377, 679 S.E.2d at 468. Again, this Court held, "[a]s Judge DeRamus was not bound by any of *Judge Frye's rulings* in the [first] trial, he did not err by failing to comply with Judge Frye's order for complete recordation." *Id.* (emphasis added).

Similarly, in this case, after Judge Morgan declared a mistrial as to the DWI charge following defendant's first trial, " 'in legal contemplation there ha[d] been no trial.' " *Id.* at 376, 679 S.E.2d at 468 (quoting *Sanders*, 347 N.C. at 599, 496 S.E.2d at 576). On retrial de novo, Judge Baddour was not bound by jury instruction rulings made during the first trial. *Id.* *See also Simpson v. Plyler*, 258 N.C. 390, 398, 128 S.E.2d 843, 849 (1963) (holding rule that one superior court judge cannot overrule another was not violated during retrial because in first trial, when judge set aside verdict and ordered new trial, he "vacated *all rulings* made by him in the course of the trial" (emphasis added)). Therefore, under *Harris*, Judge Baddour's decision to give the refusal instruction did not violate the rule that one superior court judge cannot overrule another in the same matter or the doctrine of collateral estoppel.

Moreover, the doctrine of collateral estoppel applies only to an issue of ultimate fact determined by a final judgment. *State v. Edwards*, 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984) ("Under the doctrine of collateral estoppel, an *issue* of ultimate fact, once determined by a valid and final judgment, cannot again be litigated between the same parties in any future lawsuit."). Here, Judge Morgan's ruling involved a question of law, not fact, and there was no final judgment because of the mistrial on the DWI charge. Collateral estoppel cannot, therefore, apply to this

case. *See State v. Davis*, 106 N.C. App. 596, 600-01, 418 S.E.2d 263, 266 (1992) (when jury acquitted defendant on charges relating to one victim but could not reach verdict on charges relating to second victim and trial court ordered a mistrial with respect to second victim, holding that "[t]he jury was hung . . . and the protections of . . . collateral estoppel [we]re inapplicable" upon retrial).

Defendant nonetheless cites *State v. Cornelius*, 219 N.C. App.329, 723 S.E.2d 783, *appeal dismissed and disc. review denied*, 366 N.C. 236 731 S.E.2d 173 (2012), *State v. Dial*, 122 N.C. App. 298, 470 S.E.2d 84 (1996), and *State v. Melvin*, 99 N.C. App. 16, 392 S.E.2d 740 (1990), in support of her argument. None of these cases involved the same procedural posture as this case.

In both *Dial* and *Cornelius*, the juries in the first trial reached verdicts on certain issues, but the trial court was required to declare a partial mistrial on other issues. *Cornelius*, 219 N.C. App. at 331, 723 S.E.2d at 785; *Dial*, 122 N.C. App. at 302, 470 S.E.2d at 87. This Court held in both cases that collateral estoppel applied during the retrials with respect to the already-rendered verdicts, and the defendants could not re-litigate the issues determined by the prior verdicts. *Cornelius*, 219 N.C. App. at 337, 723 S.E.2d at 788, 789; *Dial*, 122 N.C. App. at 306, 470 S.E.2d at 89. Neither *Cornelius* nor *Dial* applies when, as here, there was no relevant jury verdict accepted by the trial court during the 2011 trial and defendant, instead, challenges a legal ruling by the court.

Defendant's reliance on *Melvin* is also misplaced. There, during the first trial, the trial court heard voir dire testimony prior to denying the defendant's motion to suppress his confession. 99 N.C. App. at 20, 392 S.E.2d at 742. During the defendant's retrial following a mistrial, the court refused to grant a voir dire hearing on the confession evidence since one had been held during the first trial. *Id.* On appeal, the defendant contended that "a *voir dire* hearing must be held in order to determine whether any additional evidence could be brought out which would warrant reconsideration of the order from the first trial." *Id.*, 392 S.E.2d at 743. While this Court upheld the trial court's decision not to conduct a new voir dire hearing because the defendant failed to produce any additional evidence not heard in the first hearing and because the trial court had reviewed the prior order and decided it should remain in effect, *id.*, nothing in *Melvin* holds or even suggests that the trial court, on retrial, was bound by the order entered during the defendant's first trial.

Consequently, as this Court held in *Harris*, Judge Baddour was not bound by Judge Morgan's legal rulings during the first trial and was

entitled to revisit the issue whether to instruct the jury that if it found defendant had refused to submit to a breath test, it could consider that refusal as evidence of guilt. Based on the evidence before him, Judge Baddour gave the following instruction over defendant's objection:

> If the evidence tends to show that a chemical test known as an Intoximeter was offered to the defendant by a law enforcement officer and that the defendant refused to take the test, you may consider this evidence together with all other evidence in determining whether the defendant was under the influence of an impairing substance at the time the defendant drove a motor vehicle.

[2] Defendant argues alternatively that the evidence at his second trial still did not support the giving of the instruction. Jury instructions are meant to "clarify issues so that the jury can apply the law to the facts of the case." *State v. Williams*, 136 N.C. App. 218, 222, 523 S.E.2d 428, 432 (1999). Accordingly, a trial judge may "not give instructions to the jury which are not supported by the evidence produced at the trial." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973). The question whether the evidence presented at trial was sufficient to support a jury instruction is reviewed de novo by this Court. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

This Court addressed whether the evidence sufficiently showed a refusal to take a breath test in *Tedder v. Hodges*, 119 N.C. App. 169, 457 S.E.2d 881 (1995). There, the petitioner driver appealed from the revocation of his driver's license arguing, among other things, that the respondent Commissioner of the North Carolina Department of Motor Vehicles' evidence "failed to prove that petitioner willfully refused to submit to the chemical analysis." *Id.* at 174, 457 S.E.2d at 884. This Court summarized the pertinent evidence as follows:

> Here, Officer Kapps testified that after Officer Hutchins requested petitioner to take a breathalyzer test, petitioner put his fingers in his mouth and Officer Kapps had to restart the observation. Officer Kapps admitted that she had not told petitioner not to put anything in his mouth, but after he put his fingers in his mouth, she instructed him that if he did it again, he would be written up as a refusal. Officer Kapps further testified that after the second observation period, petitioner blew into the instrument five or six times, but that "when he got the tone to start, he would stop blowing." Officer Kapps

testified that she told petitioner before he started blowing that she "needed for him to blow hard enough to bring that tone on and to blow until [she] told him to stop." Officer Kapps testified that she could not tell if petitioner physically could not blow into the machine or if he was intentionally not blowing. Although Officer Hutchins testified that petitioner appeared to be generally cooperative, Officer Hutchins also testified that petitioner "kept leaning over and putting his fingers in his mouth" and that Officer Kapps and he had to tell petitioner several times not to put his fingers in his mouth or they would write him up as a refusal.

*Id.* at 174-75, 457 S.E.2d at 884-85. The Court concluded that the "respondent's evidence showed that petitioner failed to follow the instructions of the breathalyzer operator." *Id.* at 175, 457 S.E.2d at 885. Further, a "[f]ailure to follow the instructions of the breathalyzer operator is an adequate basis for the trial court to conclude that petitioner willfully refused to submit to a chemical analysis." *Id.*

Here, Officer Shehan testified that he "explain[ed] the process of the instrument" and "the proper method on how to administer the test" to defendant. He then asked defendant to provide a breath sample. Officer Shehan testified that defendant blew into the instrument three times during the first administration of the breath test, but provided three insufficient samples because, each time, "[s]he would start to blow and then taper off on the breath which would be indicated by the bars [on the instrument] which would show initially how much breath was going in and then it would then taper back to the point to where the instrument would say 'insufficient sample.' " After these three insufficient attempts, the instrument " 'timed out.' "

Officer Shehan then gave defendant a second opportunity to provide sufficient breath samples, but defendant again repeatedly provided insufficient samples by initially blowing into the instrument but then tapering off her breath prematurely such that the instrument read " 'insufficient sample' " after timing out a second time. In total, defendant provided six insufficient breath samples.

Based on this behavior, Officer Shehan formed the opinion that defendant was not attempting to give a sufficient breath sample. He testified that defendant appeared to be breathing normally and that he has never observed a person who appeared to be breathing normally who was unable to provide a sufficient breath sample. Officer Shehan also

**STATE v. MACON**

[227 N.C. App. 152 (2013)]

noted that he had observed people who did appear to have difficulty breathing who nonetheless were able to provide sufficient breath samples. Officer Shehan testified at trial that he "could have and should have submitted . . . the test tickets in addition to the affidavits that were signed to DMV . . . and request[ed] a revocation of [defendant's] driver's license based on a nonaggressive refusal." In addition, Officer Shehan testified that he could have marked, although he did not, defendant's breath test as a refusal based on her behavior during the testing. Finally, Officer Shehan testified that defendant displayed a "passive resistance . . . towards following orders and following directions" during the testing process.

As in *Tedder*, the evidence of defendant's failure to follow instructions regarding the breath test was evidence that defendant refused to take the test, despite the fact that she did blow into the instrument. Accordingly, the trial court did not err, based on the evidence, in giving the refusal instruction to the jury.

Defendant nonetheless argues that because Officer Shehan did not mark the test as a refusal immediately following administration of the test and did not report defendant's test as a refusal to the Department of Motor Vehicles, his "oral testimony that he would have done things differently if he had them to do over was insufficient to counter the weight of his actions at the time of the breath test." This argument goes to the weight and credibility of the evidence, which were questions for the jury to decide in determining whether the evidence did, in fact, demonstrate defendant's guilt. Because there was evidence supporting the refusal instruction, defendant has not shown error by the trial court.

No error.

Judges BRYANT and CALABRIA concur.